(April 26, 1923.)

## ELSIE BLAYDEN and FRED A. BLAYDEN, Her Husband, Respondents, v. M. M. MORRIS and PEARL M. MORRIS, His Wife, Appellants.

[214 Pac. 1039.]

ADVERSE POSSESSION — EVIDENCE OF LAND ASSESSED — PAYMENT OF TAXES.

1. The description of land in the assessor's plat-book must be complete by itself and sufficient to identify the land, and such description cannot be impeached or varied by parol evidence.

2. Payment of taxes upon a legal subdivision inclosed by fences, inclosing also a strip of adjoining land not assessed to the claimant, where the correct line of the legal subdivision does not include such inclosed strip, is not a payment of taxes upon the disputed strip, and a person claiming by adverse possession cannot prove the same by such evidence of payment of taxes.

3. The payment of taxes for the statutory period is one of the requirements essential to sustain adverse possession.

APPEAL from the District Court of the Seventh Judicial District, for Payette County. Hon. B. S. Varian, Judge.

Action to quiet title. From judgment for plaintiffs, defendants appeal. *Affirmed.*

Haynes & Wilbur, for Appellants.

Possession of lands within an inclosure, though the fence be off from the true line by a mistake of fact, may be adverse. (*Bayhouse v. Urquides,* 17 Ida. 286, 105 Pac. 1066; *Alverson v. Hooper,* 108 Wash. 510, 185 Pac. 808; *Rude v. Marshall,* 54 Mont. 27, 166 Pac. 298.)

Taxpayer A's intention to retain, or supposition that he has retained, title to the full acreage in his legal subdivision, by the payment of taxes on such legal subdivision, will not prevent taxpayer B, whose lands adjoin his, from acquiring by adverse possession, a portion of A's legal subdivision by the erection or acquisition by B of a fence built off the

true survey line and within A's subdivision. (2 C. J. 206, sec. 425; *Bayhouse v. Uriquides, supra; Alverson v. Hooper, supra.*)

If the assessor, in assessing B's subdivision, does, in fact, deem the improvements and the land upon which the same are made to be a part of B's subdivision, and assesses B's subdivision accordingly, then, if B pays such tax assessment, and such assessments and payments continue for the statutory period of five years, so far as payment of taxes is concerned, B has complied with C. S., sec. 6603. (*Bayhouse v. Urquides, supra.*)

The findings of fact together with the uncontroverted evidence of appellant, as to the payment, by appellants, of all taxes levied against appellants' lands beginning with 1912, establish the fact that, either prior to the time when respondents acquired the first of their holdings adjoining those of appellants, viz., 1917, or prior to the date when, according to the testimony of respondent Blayden, appellant Morris agreed to move the fence in controversy, viz., 1918, appellants had possessed the disputed strip of land adversely to respondents, their predecessors, and the world, for the statutory period. (C. S., sec. 6603; *Bayhouse v. Urquides, supra; Alverson v. Hooper, supra; Rude v. Marshall, supra.*)

Alfred F. Stone and Harry S. Kessler, for Respondents.

Where a person claims land by adverse possession beyond the boundary described in his deed, but pays taxes only upon the lands described in his deed, he cannot successfully maintain an action to quiet title by adverse possession, and it is not sufficient for him to show that he paid taxes on other lands, supposing the disputed lands to be included therein; this is particularly true where no boundary has been agreed upon. (C. S., sec. 6603; *Brown v. Brown,* 18 Ida. 345, 110 Pac. 265; *Citizens Right of Way Co., Ltd., v. Ayers,* 32 Ida. 206, 179 Pac. 954; *Hesse v. Strode,* 10 Ida. 250, 77 Pac. 634; *McDonald v. Drew,* 97 Cal. 266, 32 Pac. 173, and cases cited; *Friedman v. Southern California Trust Co.,* 179 Cal. 266, 176 Pac. 442; *Baldwin v. Temple,* 101 Cal.

396, 35 Pac. 1008; *Staniford v. Trombly*, 181 Cal. 372, 186 Pac. 599; *Standard Quick Silver Co. v. Habishaw*, 132 Cal. 115, 64 Pac. 113; *Mann v. Mann*, 152 Cal. 23, 91 Pac. 994; *Reynolds v. Willard*, 80 Cal. 605, 22 Pac. 262; *Schmidt v. Williams*, 34 Ida. 723, 203 Pac. 1075.)

The assessor in making assessments upon real estate must accurately describe the property and the ownership thereof must be shown upon a plat-book; these records must be complete in themselves and sufficient to identify the land, or, if reference to a map or record is required, that should be indicated in the assessment; and these descriptions cannot be impeached, varied or explained by parol evidence. (C. S., secs. 3128, 3129; *Wilson v. Jarron*, 23 Ida. 563, 131 Pac. 12; *Spring Valley Water Co. v. Alameda County*, 24 Cal. App. 278, 141 Pac. 38; *Hewel v. Hogin*, 3 Cal. App. 248, 84 Pac. 1002.)

One claiming by adverse possession has the burden of proving payment of taxes upon the land in dispute or that taxes were not levied or assessed upon the property. (C. S., sec. 6603; *Swank v. Sweetwater Irr. & Power Co., Ltd.*, 15 Ida. 353, 98 Pac. 297; *Green v. Christie*, 4 Ida. 438, 40 Pac. 54; *Citizens Right of Way Co., Ltd., v. Ayers, supra; Hesse v. Strode, supra; Brown v. Brown, supra; Reynolds v. Willard, supra.*)

"Where owners of adjacent tracts, being ignorant of the location of the true line, occupy up to a line, which they agree is merely provisional, and is to continue only until the true line is thereafter determined, neither can acquire title to any land not within the true line." (2 C. J. 138, 139; *Brown v. Brown, supra; Schmidt v. Williams, supra.*)

Where there is no proof showing that actual occupancy was accompanied by a claim of title on the part of the occupant, an adverse claim based upon such occupancy cannot be allowed. (*Bower v. Kollmeyer*, 31 Ida. 712, 175 Pac. 964.)

GIVENS, Commissioner.—This is an action brought by respondents to quiet title to certain lands in Payette county,

Idaho. Appellants by cross-complaint set up adverse possession of a certain portion of the lands. The cause was tried by the court without a jury, and judgment rendered for respondents. Appellants appeal from the judgment.

Respondents have had possession of the NE. 1/4 of the SW. 1/4 and the SE. 1/4 of the NW. 1/4 for some eleven years. Appellants have had possession of the NW. 1/4 of the SW. 1/4 since 1915. The controversy is over an irregular strip containing 1.638 acres, having a length of approximately 990 feet and a width varying from nothing to an extreme width of approximately 100 feet, said strip lying east of the correct survey line between the aforesaid lands of the litigants.

At the time appellants took possession of their lands, their fence was already erected, and embraced the strip in controversy. This fence, so far as this litigation is concerned, at all times since and up to the time of the commencement of this action remained as it was, except that some time before respondents took possession of their lands, respondents and appellants moved the south end of said fence on to the lands of respondents' predecessor, but in 1918 it was restored to its former position. On the strip in controversy, appellants have an orchard of 16 prune trees, 10 apple trees, some raspberry bushes, a barn, chicken-house, hog lot and stack yard.

Respondents and their predecessors have paid the taxes assessed against the NE. 1/4 of the SE. 1/4 and the SE. 1/4 of the NW. 1/4 since 1907. This description by the correct survey includes the lands in controversy. Appellants have paid the taxes assessed against their legal subdivision since 1912.

During all of the times the lands of the litigants have been assessed and taxes paid thereon by legal subdivision or regular portions thereof, neither the conveyance by which the lands were conveyed nor the assessor's plat showed or described the irregular course taken by the controversial fence, which has been except for the temporary change above mentioned, where it now is for from 16 to 18 years. The

assessor's plat and the assessment-roll show the lands only by legal subdivisions.

During the course of the trial, appellant was asked the following question: "At the time you testified as to your land being assessed, did you point out the lands to the assessor?" Respondent's objection that the same was immaterial, irrelevant and incompetent was sustained, whereupon appellant offered to prove by the witness that at the time his lands were assessed, which assessment was a matter of record, he pointed out the lands in question to the assessor as being a part of his lands, and that this was given to the assessor for the purpose of enabling the assessor to arrive at a valuation of the land, particularly as to the acreage of appellants' land which was under improvement and which was being farmed and cultivated at that time. A like objection upon similar grounds was sustained to this offer, and appellants assign the same as error.

If the assessment-roll and plat-book of the assessor, being his official records, showed an assessment against appellants' lands by legal subdivision only, this evidence was immaterial, since the official records are the only means by which can be shown the property actually assessed. If the assessor made no note upon his record that land in addition to the legal subdivision was included in the assessment, the evidence was incompetent, because it tended to vary the written record.

"The assessor must have prepared a full, accurate and complete plat-book of his county, in which shall be platted all townships and fractional townships which have been officially surveyed and platted by the United States government; such plats to be made in a draftsmanlike manner on a scale of four inches to the mile. . . . . " C. S., sec. 3129.

The assessor in making assessments upon real estate must accurately describe the property, and the ownership thereof must be shown upon a plat-book; these records must be complete in themselves, and sufficient to identify the land, or, if reference to a map or record is required, that should be

indicated in the assessment; and these descriptions cannot be impeached, varied or explained by parol evidence.

In the following case, parol evidence was offered that the assessment was intended to include certain lands not shown in the assessor's roll to be included therein. This evidence was properly rejected by the trial court, as indicated.

"But the ruling was clearly justifiable on the ground that parol evidence is not justifiable to vary or affect the written record of the assessment.

" 'Assessment is, from its legal requirement, and the necessity of preserving its evidence, a written entry, and must depend upon the records of the commissioner's office, and not upon parol testimony, or the private duplicate of the assessor.' (*Philadelphia v. Miller*, 49 Pa. St. 440.)

"In *Allen v. McKay*, 139 Cal. 94, 72 Pac. 713, it was held that:

" 'The sole and exclusive evidence of the date of the assessment of real property is the date when the assessment-roll was completed and certified by the assessor, and the parol evidence of the assessor is not admissible to show an earlier date of such assessment.'

"In *Savings & Loan Society v. San Francisco*, 146 Cal. 683, 80 Pac. 1086, it is declared:

" 'It has often been said that the assessment-roll, when completed and certified to the board of supervisors, is the only evidence of the acts and intentions of the assessor,' citing cases." (*Spring Valley Water Co. v. Alameda County*, 24 Cal. App. 278, 141 Pac. 38; *Hewel v. Hogin*, 3 Cal. App. 248, 84 Pac. 1002; *Wilson v. Jarron*, 23 Ida. 563, 131 Pac. 12.)

Had such evidence been admitted, it would not have proven that these lands had been assessed to appellants, nor would it have proven that appellants had paid any taxes whatever thereon. This evidence was therefore clearly inadmissible.

The appellants rely upon the case of *Bayhouse v. Urquides*, 17 Ida. 286, 105 Pac. 1066, in support of their contention that they have paid taxes upon the land in con-

troversy. In that case, the original survey of Lot 9 included
the lands in controversy, and the claimant by adverse posses-
sion had paid taxes upon Lot 9 for the required length of
time to ripen his title. When a true survey was made, it
was shown that the land was actually not in Lot 9. It is
apparent that this decision was based upon the fact that
the land by the original survey was included in Lot 9, and
since the party had paid taxes upon Lot 9, his title was
good. In the case at bar, appellant has paid taxes only
upon his legal subdivision, and it is not contended that
there was ever any survey which included the lands in
controversy in the legal subdivisions owned by him. Conse-
quently he has paid no taxes whatever upon this land, and
the land always having been included in the legal sub-
divisions owned and claimed by respondent, and respondent
having paid taxes thereon, he has not lost his title thereto.
The case at bar falls within the doctrine laid down by this
court in *Brown v. Brown,* 18 Ida. 345, 110 Pac. 269, and not
under *Bayhouse v. Urquides, supra.* (*Schmidt v. Williams,*
34 Ida. 723, at 730, 203 Pac. 1075.)

Where a person claims by adverse possession beyond the
boundary described in his deed, but pays taxes only upon
the lands described in his deed, he cannot successfully main-
tain an action to quiet title by adverse possession, and it is
not sufficient for him to show that he paid taxes on other
lands, supposing the disputed lands to be included therein;
this is particularly true where no boundary has been agreed
upon.

''Defendant owned lot 7 adjacent to plaintiff's lot 4,
and for more than five years the division fence existed so
as to place a narrow strip of lot 4 on defendant's side.
*Held,* where during all the time plaintiff's property was
assessed to him as 'lot 4,' and he had paid all taxes on
such assessment, and defendant's property was assessed to
defendant simply as 'lot 7,' without mention of the fence,
and he paid all taxes on such assessments, that defendant's
possession of the strip of lot 4 on his side of the fence
was not adverse. . . . . *Webb v. Clark,* 65 Cal. 56, 2 Pac.

747; *Ross v. Evans,* 65 Cal. 439, 4 Pac. 443; *McNoble v. Justiniano,* 70 Cal. 395, 11 Pac. 742." (*McDonald v. Drew,* 97 Cal. 266, 32 Pac. 173.)

"The question controverted, touching the adverse possession of defendant, is as to whether taxes were levied and assessed upon the demanded premises. . . . . The assessment did not refer to the fence which cut a few acres off from the remainder of the ranch, but referred to the line between the two ranches." (*Baldwin v. Temple,* 101 Cal. 396, 35 Pac. 1008.)

The court held that the taxes were paid only upon the land within the line, not the land within the fence.

"Nor did the defendants establish their plea of adverse possession. Granting, as they contend, that the evidence shows that they were in the actual occupation of the disputed premises since the construction of the fence in 1884, claiming them as their own. There was no evidence that the defendants or their grantors had for the statutory period paid the taxes which had been levied upon the land, as required by section 325 of the Code of Civil Procedure. The only evidence in this regard was that they had paid the taxes on lot 2. But, as we have seen, the premises in question were not a portion of lot 2, but were a part of the NE. ¼ of the SW. ¼ of section 15, and taxes on this subdivision were paid by Sayre's successors. The statutory requisite to the acquisition of a title by adverse possession had therefore not been fulfilled." (*Mann v. Mann,* 152 Cal. 23, 91 Pac. 994.)

"The plea of adverse possession is ineffectual for the same reason. Concededly, the defendant paid no taxes except those assessed upon the land described by its deed." (*Friedman v. Southern California Trust Co.,* 179 Cal. 266, 176 Pac. 442.)

This court has repeatedly held that under C. S., sec. 6603, the payment of taxes for the statutory period is one of the essential requirements to sustain adverse possession. (*Swank v. Sweetwater Irr. & Power Co.,* 15 Ida. 353, 98 Pac. 297; *Green v. Christie,* 4 Ida. 438, 40 Pac. 54;

*Citizens Right of Way Co. v. Ayres,* 32 Ida. 206, 179 Pac. 954; *Citizens Right of Way Co. v. Pollard,* 32 Ida. 212, 180 Pac. 259; *Hesse v. Strode,* 10 Ida. 250, 77 Pac. 634.)

The two cases cited by appellants from Washington and Montana are not in point, because there was no statute requiring the payment of taxes, as clearly indicated by the Montana court in *Blackfoot Land Development Co. v. Burks,* 60 Mont. 544, 199 Pac. 685, commenting upon *Rude v. Marshall,* 54 Mont. 27, 166 Pac. 298, one of the cases cited by appellant, as follows: "There was not any statute in this state requiring the adverse holder to pay taxes until the enactment of chapter 3 of the Session Laws of 1917."

Since the appellant has paid no taxes upon the land in controversy, the trial court did not err in quieting title in respondents.

Budge, C. J., and Dunn and William A. Lee, JJ., concur.

PER CURIAM.—The above and foregoing has been examined and is hereby adopted in whole as the opinion of the court. The judgment is therefore affirmed, and it is so ordered. Costs to respondents.