237 P.2d 1053

**CALKINS et ux. v. KOUSOUROS et al.**

No. 7762.

Supreme Court of Idaho.

Nov. 23, 1951.

McNaughton & Sanderson, Coeur d'Alene, for appellants.

Clay V. Spear, Coeur d'Alene, for respondents.

GIVENS, Chief Justice.

January 30, 1950 plaintiffs-appellants filed suit to quiet title to the following described property: "Beginning at the northwest corner of the parcel of land herein referred to at a point where the North line of Lot 3, Sec. 22, T. 56 N. Range 1 W. B. M. intersects the East line of existing road across said tract as the point of beginning; thence on a line South 16° 42′ East 143.1 ft. to a point being the Southwest corner of the tract of land herein referred to; thence on a line North 78° 42′ East 179.8 ft. to the Southeast corner of the tract herein referred to; thence on a line North 5° 30′ West 102.2 ft. to the Northeast corner of the tract herein referred to; thence West 207.8 ft. to point of beginning, being the Northwest corner of the tract herein described and enclosed." as against defendants-respondents, claiming by adverse possession and on two deeds, one to appellants

152

from Michael and Catherine Szmanski, husband and wife, April 14, 1942 describing the lot in controversy as follows:

"A tract of land in Lot Three (3), Section Twenty-two (22), Township Fifty-six (56) North, Range One (1) West, Boise Meridian, more particularly described as follows to-wit:

"Commencing at a point where the north line of Lot Three (3) intersects with the road as now located on said Lot Three (3); thence in a southerly direction 142 feet along said road; thence East 148 feet; thence North 87 feet; thence West 208 feet to the place of beginning." Dfts. Ex. 5 and the other from respondent Opal Roberge Kousouros, formerly Opal McGee Roberge, and her then husband, Joseph O. Roberge, grantors, of August 16, 1941, to the above Szmanskis containing the same description.

Appellants' complaint alleged enclosure of the area claimed by them by a substantial wire fence from April 14, 1942; the improvement and erection thereon of various structures since 1942; that the descriptions in the Roberge and Szmanski deeds were inaccurate and indefinite, but that by their enclosure and occupancy, appellants' claim of ownership thereof has been open, notorious, continuous, and adverse to the world; and asked that the proper description be determined and they be decreed to be the owners of the tract claimed, and their title quieted thereto against respondents, etc.

Respondents' answer admitted the deeds; that the sale to Szmanskis was without accurate survey; denied the description therein was inaccurate or indefinite; denied the enclosure and improvements; alleged that appellants have endeavored to purchase from respondents the portion not included in the two deeds mentioned; that the use of the excessive land as claimed by plaintiffs-appellants was with permission of respondents, and so recognized by appellants.

The court found the erection of the fence, but that it included a portion of the land belonging to respondents; attempts to purchase as alleged; occupancy by permission of respondents; that plaintiffs were not in open, notorious, exclusive and adverse possession of the land claimed by them; had not paid taxes thereon and rendered judgment that appellants take nothing by their complaint, dismissed it and awarded costs to respondents.

Defendants' Exhibit 3 (copy of which is attached hereto) is a plat made by Mr. Chas. Tiggelbeck, a surveyor, and shows the area occupied by appellants with the fence enclosing same and a lesser area as outlined by the deeds, except the length of the north line.

Mrs. Roberge's absence from Sandpoint for some years after 1944 and prior to 1950 did not overcome appellants' claim of adverse, i. e., hostile possession by occupancy and substantial enclosure, even though she denied that, because of such absence, she had any actual knowledge of

the situation. She testified she knew the fence was at least started in 1942. "The general rule seems to be that 'in the absence of some special statutory provision to the contrary, in order to perfect title by adverse possession it is not necessary that the true owner should have had actual knowledge or notice of the claim. If the claimant's possession is open and notorious under claim of title it is sufficient in its character, whether the true owner knew the facts or not. The claimant need not otherwise repudiate the title of others claiming the land, or notify them of his claim of title. On open, visible, and notorious possession by the adverse claimant the law presumes notice to the true owner in the absence of evidence that inquiries of the true owner, prosecuted with due diligence, did not disclose such possession. Such possession is the equivalent of actual notice of the claim under which it is held, and if the owner fails to look after his interests until the title of the adverse claimant grows into maturity he has no one but himself to blame for the loss of his estate.' 2 C.J. sec. 59, p. 77." Pfleuger v. Hopple, 66 Idaho 152, at page 157, 156 P.2d 316, at page 318. Coe v. Sloan, 16 Idaho 49, at pages 58–59, 100 P. 354.

There was nothing furtive, concealed, secretive or surreptitious about appellants' possession and claim of ownership by possession. " * * * Their (herein respondents) lack of knowledge of the precise extent of the defendants' claim was not due to concealment by the defendants; it was due to the plaintiffs' election to remain inactive. They are thus to be charged with knowledge." Dame v. Fernald, 86 N.H. 468, 171 A. 369, at page 371.

Respondents correctly state that to establish adverse possession, it must be shown the land has been adversely occupied and claimed for a period of five years continuously and that claimant has paid taxes thereon as levied and assessed. Likewise, the statutes unequivocally declare possession, under written claim of title and claim of land not founded upon written instruments, is deemed to be possessed and occupied adversely where it has been protected by substantial enclosures, cultivated and improved. Sections 5–207, 8, 9 and 10, I.C.

Mrs. Kousouros, herself, testified that at the time the deed was given to the Szmanskis, they jointly ran the lines of the lot, as sold, on the ground:

"A. No, the lines were drawn out and checked with a steel tape by Mr. Szmanski and Mr. Roberge.

"Q. Were you there at that time? A. I was there most of the time."

"Q. The property was taped out on the ground? A. That is right."

She also testified wooden stakes were placed at the corners and that these did not coincide with pipes later placed by appellants at the northeast and southeast corners. However, the evidence is conclusive and uncontradicted that immediately after these lines were thus run the fence was

154

CALKIN'S PROPERTY
IN
LOT 3-SEC.22-T56N-R1W. B.M.
Scale:1"= 40'

Point of Beginning

I, Hereby Certify this to be a correct plot of a survey made by me on July 27, 1950.

Chas. Sigelbeck S-504.

County Road

Calkin's Cabin

Nelson's Cabin

Cabin

Garage

constructed around the premises and, except for possibly a slight jog in the northern line, has continuously been and now is in the same position as when first so erected.

Thus, the property as claimed by appellants was enclosed by a fence and was openly, notoriously and adversely used, claimed and occupied by them and their predecessors since 1942, i. e., eight years prior to the bringing of the action. Bayhouse v. Urquides, 17 Idaho 286, 105 P. 1066, construing and applying Section 4043, Rev.Codes, now Section 5-210, I.C., held this constitutes complete adverse possession.

"Further, in the case before us, the respondents' predecessors in interest established by conduct and understanding the intent of the parties and by actual measurement determined the quantity of land conveyed and in measurements included to the center of the abutting street and alleys. Thus, the parties made a practical construction of what constituted the west two acres of the tract in question. Where the parties put a reasonable, practical construction on a deed and adhere to the construction for a period of years, such construction is binding on subsequent purchasers who have no notice of any different oral arrangement. [Cases.] "Thus, it appears that the parties not only construed the deed, but divided the land and acquiesced in the location of the line fence for a period exceeding the requirements of the Statute of Limitations, Sec. 5-207." Mulder v. Stands, 71 Idaho 22, 225 P.2d 463, at page 466.

Defendants Exhibit No. 3 demonstrates that if the description in the two deeds is followed literally and in the directions stated, i. e., first South, thence East, thence North, thence West, the north line is too long because of misconception of the true initial angling course along the east side of the road from the mutually conceded correct starting Northwest corner. If the course is pursued in the opposite direction, that is, first East, thence South, thence West to the road, the distances will more nearly correspond with the area claimed by appellants and enclosed in the fence. If the course of the South line be *east* as in the deeds, it would run right through the Nelson cabin, this lot having been sold by respondents to Nelson. It is virtually conceded the North line of the Nelson lot is the South line of appellants' lot. Hence, respondents perforce by their sale to Nelsons concede the stated direction of the South line as *east* in the deeds was not correct. (Emphasis ours.) The wooden stake claimed by Mrs. Kousouros to have been put on the correct original South line is *north* of the South line in the deeds. The length of the North line in the deeds is almost identical with the North line claimed by appellants. This but emphasizes that the north fence is now, as it was when appellants went into possession.

■ This is peculiarly a case of adverse possession and the uncontradicted facts, enclosure and exclusive possession, support appellants' contentions. Even though eith-

156

er or both appellants and respondents were mistaken as to the true lines or what was included in the deeds, the claim as asserted by appellants by their enclosure and occupancy governs. Bayhouse v. Urquides, supra, 17 Idaho at pages 294–297, 105 P. 1066; Rodgers v. Carpenter, 44 Nev. 4, 189 P. 67.

 Appellants' property was assessed and taxed as Tax No. 3. Ptfs. Ex. 7, a purported blue print outline of this Tax number as prepared by Mr. Tiggelbeck, supra, from the plat book and records in the Assessor's office, was rejected by the court when offered in evidence as not sufficiently accurate. This leaves as the only showing in this regard the testimony of the Assessor, which as pertinent, is as follows:

"A. I had no way of knowing whether that was his (appellants') property or not. I assessed his property—I had it on written tax number and I presumed that house was on the property, and that perhaps the fence might, in a rough way, cover the property. But I never did know.

"Q. You never checked out the exact survey of it? A. No, never did.

"Q. But you considered that the area that was Calkins property was the property within that fence? A. I figured that tax numbered covered his property.

"Q. Within that fence? A. Whether it was in the fence or not. I presume that, unless there was errors made there—I believe there was—that it may have been within the fence; whether the fence cov-ered the exact property or not, I never knew.

Upon this showing appellants will have been deemed to have been assessed and to have paid taxes on the area claimed by them. Bayhouse v. Urquides, supra, 17 Idaho at page 297, 105 P. 1066. "Where a fence constitutes a monument between tracts of conterminous owners and such monument establishes the boundary line between the adjoining premises, the requirement of the statute as to payment of taxes is satisfied by such payment on the lot within which the disputed tract is enclosed, and to which as herein found it belongs. Hence the statute requiring payment of taxes to perfect title by adverse possession is satisfied." Cases. Mulder v. Stands, supra.

 Conceding appellants sought to purchase any adverse interest in what respondents claim was the over-plus, same was not an acknowledgment of respondents' superior title and did not void or interfere with the continuity of appellants' claim of title by adverse possession. "* * *; that such claim (adverse possession) must be absolute and exclusive of any other right, and that if during that time the defendant, or·those under whom he claims, either by declaration or conduct, asserted their title to be in another person or persons, the statute cannot run in his favor. The defendant, thereupon, asked the Court to give, among other instructions, the following: 'A party in possession of premises, claiming to own the same, may buy his

peace by purchasing any outstanding title, or claim of title, without admitting such title, or claim of title to be valid,' which the Court refused to give. In this we think the Court, clearly, erred. We have no doubt that the instruction refused correctly states the law on the point. A party may very well deny the validity of an adverse claim or title, and yet choose to buy his peace at a small price, rather than be at great expense and annoyance in litigating it. And such is, doubtless, often the wiser course. It is notorious that, in the confusion of title to land in this State, it is a matter of every day experience to buy up not one, only, but many adverse claims, even where the party buying believes he has, and actually has, the better title. To adopt any other principle than that embraced in the instruction refused, would, in this State, be, to deprive a very large portion of the holders of real estate, if not nearly all of them, who stand in need of it, of all benefit of the Statute of Limitations. A party is not bound to admit, and does not necessarily admit, title in another, because he prefers to get rid of that other's claim by purchasing it. He has a right to quiet his possession and protect himself from litigation in any lawful mode that appears to him most advantageous or desirable. To hold otherwise would compel him to litigate adverse claims, or by buying one, forego any right to claim the benefit of the Statute of Limitations as to all others. The principle of the case of Schuhman v. Garratt, 16 Cal. 100, covers this point. The acts and declarations of the possessor may, doubtless, be given in evidence with a view of showing the character of his claim, but whether the possession is adverse or not is a question for the jury to determine upon all the evidence. If a party is in possession continuously for five years, all the time claiming title exclusive of any other right, he is entitled to the benefit of the Statute of Limitations, no matter how many outstanding adverse claims he may purchase; and the question for the jury to determine on such claim is, whether upon all the evidence, he appears to have been continuously in possession during the time prescribed, claiming title exclusive of any other right." Cannon v. Stockmon, 36 Cal. 535, at pages 538–539; 2 C.J.S., Adverse Possession, § 151, page 716; 1 Am.Jur., p. 894, Par. 184.

There is no evidence of permissive as contra adverse use by respondents of any of the area claimed by appellants. Robert v. Perron, 269 Mass. 537, 169 N.E. 489.

The judgment is, therefore, reversed and the cause remanded with instructions to enter judgment quieting title in appellants to the area claimed by them as alleged in their complaint and shown in Dfts. Ex. 3. Costs awarded to appellants.

PORTER, TAYLOR, THOMAS, and KEETON, JJ., concur.