511 P.2d 258

Ethel I. SCOTT, a/k/a Mrs. C. A. Scott,
Plaintiff-Respondent,

v.

Hazel GUBLER and Glendon Gubler,
Defendants-Appellants.

No. 11211.

Supreme Court of Idaho.

June 13, 1973.

J. Alfred May and Greg Fuller, of May,
May & Sudweeks, Twin Falls, for defend-
ants-appellants.

Paul M. Beeks, of Kramer, Plankey,
Smith & Beeks, Twin Falls, for plaintiff-
respondent.

DONALDSON, Chief Justice.

This action involves a dispute over title
to a triangular parcel of land along the
boundary between two contiguous lots.
The lots in question are Government Lots
3 and 4, Section 14, Township 9 South,
Range 16 E.B.M., Jerome County, Idaho.
Lot 3, owned by defendant-appellant Hazel
Gubler, adjoins Lot 4 on the north. Lot 4
is owned by Ethel I. Scott, the plaintiff-re-
spondent. The section line fence between
Sections 14 and 15 runs along the western
boundaries of both Lot 3 and Lot 4.

Mrs. Scott and her husband (now de-
ceased) bought Lot 4 in 1956. Before buy-
ing the land, Mr. and Mrs. Scott commis-
sioned a survey of the boundary between
Lots 3 and 4. In 1959, Mr. Scott con-
structed a three-strand barbed wire fence

to divide Lots 3 and 4 and installed 4-inch irrigation pipes just south of the fence, on what was purportedly Lot 4. Mrs. Scott testified that when Mr. Scott built the fence, he tried to put it along the line that the surveyor had indicated in 1956. However, a survey made pursuant to this litigation, revealed that Scott's fence had enclosed, not only Lot 4, but also a triangular portion of Lot 3, which amounted to approximately 0.553 acre.

Immediately after Scott installed the fence, Mrs. Gubler demanded that he remove it, alleging that it encroached on her land. Scott refused. From 1957 to 1962, Mr. and Mrs. Scott removed rocks and debris and planted pasture grasses on all the land south of the fence. From 1962 to 1968, the Scotts (Ethel alone after her husband's death) used all the land south of the fence, including the disputed parcel, for irrigated pasture.

In 1967, Mr. Scott died. In 1968, defendant-appellant Glendon Gubler, Hazel Gubler's son, removed the fence and the irrigation pipe which had been installed by Mr. Scott. From 1968 until the time of trial (September 7, 1972), the Gublers pastured horses on both Lots 3 and 4 and allegedly piled debris, including wrecked car bodies, on land indisputedly part of Lot 4. Mrs. Scott testified that she had not been able to use Lot 4 between 1968 and the time of trial.

In 1968, Mrs. Scott brought an action against the Gublers seeking actual and punitive damages for trespass and the removal and conversion of her fence and pipe. The action was pending in one form or another until 1971, when the Gublers filed their answer denying Mrs. Scott's charges. The Gublers also filed a counterclaim alleging that the Scotts had installed the fence and the pipe on the Gublers' premises, and that this was a "wilful, malicious and wrongful act." The Gublers sought damages for the expense of removing the fence and pipe, and attorney fees.

The case was tried to the court without a jury. At the close of the evidence, the district court granted a motion by Mrs. Scott's counsel for involuntary dismissal of the Gublers' counterclaim. Subsequently the court filed findings of fact and conclusions of law and entered a judgment awarding Mrs. Scott $960 for actual damages, which were based on the rental value of Lot 4 from 1968 to 1972, the cost of replacing the fence and pipes and the cost of removing the debris from Lot 4. The court also awarded Mrs. Scott $1,000 in punitive damages and her court costs. In addition, the judgment quieted title in Mrs. Scott to the triangular portion of Lot 3 which had been enclosed by Scott's fence. That portion of the judgment reads:

"The plaintiff, Ethel Scott, is the owner of the following lands and the defendants have no interest therein. That part of Lot 3, Section 14, Township 9 South, Range 16 E.B.M., Jerome County, Idaho, described as:

Commencing at the southwest corner of said Lot 3; the true point of beginning; thence, north along the west line of Lot 3, a distance of 91.50 feet; thence north 71° 54′ east, a distance of 554.51 feet; thence south 63° 25′ west, a distance of 589.38 feet to the point of beginning."

The above portion of the judgment is based on the district court's conclusion that the Scotts had established title to the 0.553 acre portion of Lot 3 by adverse possession under oral claim of title pursuant to I.C. § 5–209.[1]

On this appeal, the Gublers make two assignments of error. First, although conceding that the Scott's possession and use of the disputed half-acre met the statutory

1. "5–209. *Possession under oral claim of title.*—Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment or decree, the land so actually occupied, and no other, is deemed to have been held adversely."

requirements for adverse possession under oral claim of title in all other respects, the Gublers contend that the Scotts did not pay taxes on the parcel of land as required by I.C. § 5–210.[2] Therefore, they argue Mrs. Scott cannot be said to have acquired title to the disputed parcel by adverse possession.

Mrs. Scott's complaint in this action did not specifically seek to quiet title to the disputed parcel, which is described in the judgment of the district court. However, the case was tried as if this issue had been properly raised and no objection was made to the discrepancy between the pleadings and the evidence at any point in the trial or on appeal. I.R.C.P. 15(b) provides:

> "*Amendments to conform to the evidence.*—When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. * *."

Therefore, the issue of whether the district court was correct in concluding that the Scotts had acquired title to the disputed half-acre by adverse possession is properly before this Court.

The district court found that from 1959, the year that the fence was built, until 1968, when the fence was torn down, Mrs. Scott and her husband had paid all the taxes levied by the Jerome County Assessor on Lot 4. He concluded that all the requirements of I.C. § 5–210 had been met and that the payment of all the taxes levied on Lot 4 by the Jerome County Assessor constituted payment of taxes on all the land actually being occupied as Lot 4, including the disputed land. We consider this conclusion to be correct.

Only a minority of American jurisdictions have enacted statutes which require payment of taxes on adversely claimed land as a prerequisite of obtaining title by adverse possession. *See* Comment, Payment of Taxes as a Condition of Title by Adverse Possession: A Nineteenth Century Anachronism, 9 Santa Clara Lawyer, 244, 249–50 (1969). In regard to boundary disputes between contiguous landowners where one party claims to have acquired title to a strip of his neighbor's land by adverse possession, the view of California, and a majority of the other states with a tax payment requirement, is that where the legal description of the adverse claimant's land does not include the disputed parcel, and taxes are assessed in accordance with the legal description, payment of such taxes does not constitute payment of taxes on the claimed parcel for the purpose of adverse possession. *E. g.,* Townsend v. Koukol, 148 Mont. 1, 416 P.2d 532 (1966); Ernie v. Trinity Lutheran Church, 51 Cal.2d 702, 336 P.2d 525 (1959).

The Supreme Court of Indiana, in certain circumstances, takes a different view. That court has held that in the case of boundary disputes between contiguous landowners, where one landowner can establish continuous open, notorious and hostile possession of an adjoining strip of his neighbor's land, and taxes are assessed by lot number or by government survey desig-

---

2. "5–210. *Oral claim—Possession defined —Payment of taxes.*—For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:
   1. Where it has been protected by a substantial inclosure.
   2. Where it has been usually cultivated or improved.

Provided, however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law."

nation, rather than by metes and bounds description, payment of taxes on the lot within which the disputed tract is enclosed satisfies the tax payment requirement of the Indiana statute.[3] Nasser v. Stahl, 126 Ind.App. 709, 134 N.E.2d 567 (1956); Echterling v. Kalvaitis, 235 Ind. 141, 126 N.E. 2d 573 (1955). Several Idaho cases have expressed approval of a similar theory. *See* White v. Boydstun, 91 Idaho 615, 622, 428 P.2d 747 (1967); Beneficial Life v. Wakamatsu, 75 Idaho, 232, 242, 270 P.2d 830 (1954); Calkins v. Kousouros, 72 Idaho 150, 156, 237 P.2d 1053 (1951); Mulder v. Stands, 71 Idaho 22, 26, 225 P.2d 463 (1950); Bayhouse v. Urquides, 17 Idaho 286, 297–298, 105 P. 1066 (1909).

In Calkins v. Kousouros, *supra*, 72 Idaho at 156, 237 P.2d at 1057, a case involving a boundary dispute between the owners of city lots, where the adverse claimant's lot was assessed as "Tax No. 3" this Court stated:

> " 'Where a fence constitutes a monument between tracts of conterminous owners and such monument establishes the boundary line between the adjoining premises, the requirement of the statute as to payment of taxes is satisfied by such payment on the lot within which the disputed tract is enclosed * * *' Mulder v. Stands [71 Idaho 22, 26, 225 P.2d 463 (1950)]."

The rigid application of the tax payment requirement of California's adverse possession statute to boundary disputes between contiguous landowners has been strongly and consistently criticized by California commentators, Comment, Payment of Taxes as a Condition of Title by Adverse Possession: A Nineteenth Century Anachronism, 9 Santa Clara Lawyer 244 (1969);

Boundary Litigation in California, 11 Stan.L.Rev. 720 (1959); Comment, The Payment of Taxes Requirement in Adverse Possession Statutes, 37 Calif.L.Rev. 477 (1949). We do not feel constrained to follow California precedent on this point, as urged by the appellants.

In the case before us, there is no evidence in the record as to how Lots 3 and 4 were described on the assessment roll of the Jerome County Assessor's Office during the period from 1959 to 1968. Hazel Gubler's 1972 Jerome County taxpayer's statement describes Lot 3 by its government survey designation rather than by metes and bounds. There was no evidence of visual inspection of Lots 3 and 4 by Jerome County Assessor after Scott's fence was installed.

Under the facts of this case, the district court was correct in concluding that payment by the Scotts of all the taxes levied on Lot 4 by the Jerome County Assessor constituted payment of taxes on all the land actually being occupied as Lot 4, including the disputed land.

Of the four Idaho cases cited by appellants in support of their contention that Mrs. Scott could not be deemed to have acquired title to the disputed parcel by adverse possession by reason of failure to comply with the tax payment requirement of I.C. § 5–210, three are readily distinguishable on their facts from the instant case. Fry v. Smith, 91 Idaho 740, 430 P.2d 486 (1967) involved a fence which had been erected as a matter of convenience, not to mark a boundary, and a tax assessment description which included more than merely the government lot designation of the property in question. Hamilton v. Village of McCall, 90 Idaho 253, 409 P.2d 393

---

3. *"Adverse possession—Payments by possessor.*—Hereafter in any suit to establish title to lands or real estate no possession thereof shall be deemed adverse to the owner in such manner as to establish title or rights in and to such land or real estate unless such adverse possessor or claimant shall have paid and discharged all taxes and special assessments of every nature falling due on such land or real estate during the period he claims to have possessed the same adversely: Provided, however, That nothing in this act shall relieve any adverse possessor or claimant from proving all the elements of title by adverse possession now required by law." Burns' Annot.Stat. § 3–1314 (1968 Replacement) IC 1971, 32–1–20–1.

(1965) involved an attempt by a town to acquire certain land by adverse possession while at the same time collecting taxes on that land from the record title holder. The case of Meyer v. Schoeffler, 39 Idaho 500, 227 P. 1061 (1924) involved an oral trade of land, a very different situation from the case before us. The fourth Idaho case cited by appellant is that of Blayden v. Morris, 37 Idaho 37, 214 P. 1039 (1923). That case has already been partially overruled in the case of White v. Boydstun, *supra*, 91 Idaho at 625, 428 P.2d 747. To the extent that *Blayden* conflicts with the views expressed in this opinion, the holding in that case is disapproved.

■ Appellants assert that "the primary reason for the tax payment clause is to give notice to the owner that his land is being adversely claimed." At the least, this assertion is open to dispute. See the discussion of this issue in Comment, Payment of Taxes as a Condition of Title by Adverse Possession: A Nineteenth Century Anachronism, 9 Santa Clara Lawyer 244, 250–54 (1969). In any event, in the case before us, the physical presence of Mr. Scott's fence for nine years, as well as the Scotts' open, visible and continuous use of all the land south of the fence, including the disputed parcel, provided ample notice to the Gublers. *Cf.* Calkins v. Kousouros, *supra*, 72 Idaho at 152–153, 237 P.2d 1053. We also note that Hazel Gubler complained that the fence encroached on her land at the time Mr. Scott installed it in 1959, but then did nothing further until after Mr. Scott's death in 1967.

■ Appellants seem to imply that if Mrs. Scott is found to have acquired title to the disputed parcel of land by adverse possession, Mrs. Gubler is entitled to restitution of a part of the taxes that she paid on Lot 3. However, they do not assign as error the trial court's failure to make findings regarding the issue of restitution.

The appellants' answer and counterclaim asserted that they, the Gublers, had paid taxes on Lot 3, but nothing was pled regarding the amount paid or concerning reimbursement. If the Gublers sought a partial reimbursement of taxes paid on Lot 3, it was their responsibility to plead and prove that issue. Converse v. Kenyon, 178 Neb. 151, 132 N.W.2d 334, 340–341 (Neb. 1965). It appears that appellants are raising this issue for the first time in this Court. Issues not originally raised in the trial court will not be considered on appeal. Williams v. Havens, 92 Idaho, 439, 444 P. 2d 132 (1968).

Appellants' second assignment of error is that the district court erred in dismissing their counterclaim for damages for the time and expense involved in removing Scott's fence and pipe and for attorney fees. They contend that the "dismissal was not * * * based upon any adequate legal or factual grounds."

■ In this case, the district court found that the Gublers had removed the fence and pipe, piled used car bodies and debris on Lot 4 and had deprived Mrs. Scott of the use of Lot 4 from 1968 until the time of trial. The court further found that "the actions of defendants from early 1968 to the present have been a willful, wanton, malicious and intentional invasion of the property rights of the plaintiff," and concluded that the Gublers were not entitled to relief on their counterclaim. The findings of the district court are supported by substantial and competent evidence and will not be disturbed on appeal. Hyde v. Lawson, 94 Idaho 886, 891, 499 P.2d 1242 (1972); Thompson v. Fairchild, 93 Idaho 584, 587, 468 P.2d 316 (1970).

The judgment of the district court is in all respects affirmed. Costs to respondent.

SHEPARD, McQUADE, McFADDEN and BAKES, JJ., concur.