598 P.2d 1046

Donald B. NESBITT and Betty L. Nesbitt, husband and wife, Plaintiffs-Appellants,

v.

Albert WOLFKIEL and Ruth Wolfkiel, husband and wife, Defendants-Respondents.

No. 12510.

Supreme Court of Idaho.

June 15, 1979.

Rehearing Denied Sept. 7, 1979.

Roger L. Williams of Schiller, Williams & Schiller, Nampa, for plaintiffs-appellants.

Leon R. Weeks of Weeks, Yost, White & Ahrens, Nampa, for defendants-respondents.

DONALDSON, Justice.

Appellants, Donald and Betty Nesbitt, originally brought this action in district court seeking damages for the respondents', Albert and Ruth Wolfkiel, alleged willful trespass upon land purportedly belonging to the Nesbitts. The Wolfkiels denied any trespass, and asserted that they are the owners of the land in question and that the Nesbitts are the trespassers. In a memorandum opinion after a trial on the merits, the trial court held that the Wolfkiels acquired title to the disputed property by accretion as well as adverse possession. The Nesbitts then brought this appeal.

The facts surrounding this litigation, as determined by the trial court in its memorandum decision, are as follows. The Nesbitts own lot 2, section 16, Township 4 North, Range 1 West, Boise Meridian, Ada County, Idaho as well as other properties in the area of lot 2 not pertinent to this action. The Wolfkiels own lot 7 of section 16, Township 4 North, Range 1 West, Boise Meridian, Ada County, Idaho. They also own other land in this area not pertinent to this action.

The United States Government patented both lot 2 and lot 7 to the predecessors in title of the parties to this action. Originally, lot 2, containing 29.80 acres, was situated north of the Boise River, and lot 7, containing 35.78 acres, was directly opposite lot 2 to the south and across the river. At the time the lots were originally surveyed in 1867, both were riparian lots on the Boise River. That same survey indicates that in 1867 the Boise River flowed through this disputed area in a channel south of where it flows today. Thus the mutual boundary between lot 2 and lot 7 in 1867 was the southerly channel of the Boise River. From 1867 to 1930 the Boise River, as a result of upstream dam construction, cut a new channel several hundred feet north of the old southerly channel. Over that period of time the south channel began to recede, and in 1943 it ceased to flow except at periods of high water.

From the time that the Wolfkiels took possession of lot 7 in 1947, having procured it from Mr. Wolfkiel's father's estate, they occupied lot 7 as well as the ground which was formerly the southern channel of the Boise River and that portion of lot 2, located south of the new north channel of the Boise River. Mr. Wolfkiel testified that he had helped his father fence the disputed piece of property down to and along the northern channel of the Boise River in 1930 and that that fence had been maintained there for the past 40 to 45 years. He stated further that he had used the disputed property as a feedlot at one time and that he made improvements to the property consisting of feeder bins. Further, the Wolfkiels pastured cattle in this area from time to time since they took possession of lot 7.

The Ada County Tax Assessor's Office has always taxed the Nesbitts and the Wolfkiels by reference to lot 2 and lot 7 respectively, without any description by metes and bounds. From the time that the Nesbitts took possession of lot 2 until 1967, they paid property tax on lot 2 for the full

29.80 acres. In 1967 the Assessor's Office discovered that the course of the Boise River had changed in a northerly direction. As a result, from 1967 to the present, the Assessor's Office has only assessed the Nesbitts with a property tax on that part of lot 2 lying north of the Boise River where it presently flows. The Assessor's Office never reassessed any part of the property which the Nesbitts lost from lot 2 because of the river's change in direction to the Wolfkiels as part of lot 7. The Wolfkiels have always paid the property tax with respect to the original 35.78 acres contained in lot 7, but they have never paid any property tax, nor did the Assessor's Office ever assess them a tax, for the property now in dispute.

Based on these facts the trial judge concluded that the Wolfkiels acquired title to the disputed property by accretion and that the Nesbitts lost title to the disputed property by erosion. The court concluded further that given the growth of lot 7 by accretion and considering the evidence in support of the fact that the Wolfkiels and their predecessors in interest paid all taxes assessed on lot 7, fenced and improved the disputed property as well as grazed cattle on it, the Wolfkiels made out a case of title by adverse possession under I.C. § 5–210.

■ The essential issue which the Nesbitts raise on appeal is whether the evidence adduced at trial supports the trial court's conclusions. We limit our review, of course, to a determination of whether there is competent evidence in the record before us to support the trial court's conclusions. *Edgeller v. Johnston*, 74 Idaho 359, 368, 262 P.2d 1006, 1011 (1953). Where there is evidence to support the trial court's findings, this Court will not disturb them on appeal. *Id.* Based on our review we hold that there was insufficient evidence upon which the trial court could conclude that the Wolfkiels

established title to the disputed property on the basis of accretion but that there was sufficient evidence to support his conclusion that the Wolfkiels established title on the basis of adverse possession.

■ In his memorandum decision the trial judge noted the generally accepted rule that the owner of riparian land acquires title to all additions to his land caused by accretion and loses title to such portions of his land which are worn or washed away by erosion by water in a stream, unless the change takes place suddenly by avulsion.[1] *See* 78 Am.Jur.2d 406 et seq. Further, the trial judge interpreted the case of *Joplin v. Kitchens*, 87 Idaho 530, 394 P.2d 313 (1964) to stand for the proposition that "[i]f there is no evidence to the contrary, it is presumed that the change in location of a river channel was not by avulsion." The court concluded that since in this case there was no specific evidence that the river changed by avulsion, the presumption of accretion would apply. Thus the Wolfkiels acquired title to the disputed property by accretion and the Nesbitts lost title to that same property by erosion. It is true that absent clear evidence to the contrary, the law will presume accretion rather than avulsion. *See generally* 78 Am.Jur.2d Waters § 427 (1975). However, the presumption is overcome where the evidence sufficiently shows an avulsive change. *State ex rel. Com'rs of Land Office v. Seelke*, 568 P.2d 650 (Okl. App.1977).

■ The record before us indicates that when a survey was conducted in 1867, the Boise River flowed through the southern channel only. The northern channel has been generally located in the area where it now flows since the early 1920's; although, water continued to flow through the southern channel at times of high water until 1943. It is evident, therefore, that some-

---

1. "Accretion" is the increase of riparian land by the gradual deposit, by water, of solid material, whether mud, sand or sediment, so as to cause that to become dry land which was before covered by water. 78 Am.Jur.2d § 406. Accretion occurs when the line between water and land bordering thereon is changed by the gradual deposit of alluvial soil upon the margin of water. *Id.*

"Avulsion" is a sudden and perceptible loss or addition to land by the action of water, or a sudden change in the bed or course of a stream. *Joplin v. Kitchens, ante.*

time during the period of 1867 to the early 1920's the river substantially changed course to the northern channel.

We also note, as did the trial court, that it was during this period of time that the Boise River was considered to be a vagrant stream. *Scott v. Watkins*, 63 Idaho 506, 122 P.2d 220 (1942); *Fischer v. Davis*, 24 Idaho 216, 133 P. 910 (1913). Because of the vagrant nature of the Boise River from 1867 until the early 1920's and because the evidence shows that the river literally cut a new channel to the north over approximately a 50 year period, *cf. McCafferty v. Young*, 144 Mont. 385, 397 P.2d 96 (1964) (where channel of river moved one-quarter of a mile in less than 100 years, such migration was "perceptible" and, therefore avulsive), the presumption of accretion was overcome. It was therefore incumbent upon the Wolfkiels to come forward with evidence indicating that the change which occurred was as a result of a gradual deposit of alluvial soil on the sides of the southern channel. *See* 78 Am.Jur.2d Waters, *supra*. This the Wolfkiels failed to do, and they therefore did not establish a claim to the disputed property on the basis of accretion.

■ Notwithstanding the Wolfkiels' failure to establish a claim to the disputed property on the basis of accretion, the evidence presented at trial clearly supports the trial court's conclusion that the Wolfkiels established their claim of title to the disputed property on the basis of adverse possession pursuant to I.C. § 5–210. The Nesbitts argue in this regard that the Wolfkiels did not establish a claim to the disputed property because they failed to make sufficient improvements as well as to pay taxes on the land they claim.

■ Idaho Code § 5–210 provides that where title is claimed other than under a written instrument, judgment or decree, as is the case here, the land shall be deemed to have been possessed and occupied, when and only when, it has been protected by a substantial enclosure *or* has been cultivated or improved. *Swanson v. State*, 83 Idaho 126, 358 P.2d 387 (1960); *Edgeller v. Johnston, supra*. *Contra, Hyde v. Lawson*, 94 Idaho 886, 499 P.2d 1242 (1972). The statute fixes these conditions, one of which, but not necessarily both, must exist and be proven.[2] *Edgeller v. Johnston, supra*. Such proof must be by clear and satisfactory evidence. *Loomis v. Union Pacific Railroad Co.*, 97 Idaho 341, 544 P.2d 299 (1975). The trial judge specifically found upon clear and satisfactory evidence that the Wolfkiels protected the disputed property by a fenced enclosure for more than the statutory five year period. Because the evidence at trial unquestionably supports this finding, it is not necessary to, nor do we, decide whether the disputed property was cultivated or improved as contemplated by the statute.

■ With respect to the payment of taxes which have been levied and assessed on the disputed property, the Nesbitts contend on appeal as they did at trial that since the Wolfkiels paid taxes on only the 35.78 acres originally contained in lot 7, they did not fulfill the requirement of having paid the taxes on the property claimed by adverse possession. Relying on *Scott v. Gubler*, 95 Idaho 441, 511 P.2d 258 (1973), the court correctly concluded that the Wolfkiels complied with the tax payment provision contained in I.C. § 5–210.

In *Scott v. Gubler, supra*, this Court adopted the position that,

"[I]n the case of boundary disputes between contiguous landowners, where one landowner can establish continuous open, notorious and hostile possession of an adjoining strip of his neighbor's land, and taxes are assessed by lot number or by government survey designation, rather than by metes and bounds description, payment of taxes on the lot within which the disputed tract is enclosed satisfies the tax payment requirement of the . . . statute. *Nasser v. Stahl*, 126 Ind.App.

---

2. To the extent that any language in *Hyde* suggests that the party asserting adverse possession must prove that he protected the property by a substantial enclosure and prove that he usually cultivated or improved the property, it is overruled.

709, 134 N.E.2d 567 (Ind.1956)." *Scott v. Gubler, supra* at 443–44, 511 P.2d at 260–61.

In the instant case, the Ada County Assessor's Office assessed the Wolfkiels for property tax on lot 7, and the Wolfkiels have always paid those assessments. Therefore the Wolfkiels, by paying the taxes on lot 7, satisfied the tax payment requirement of I.C. § 5–210. *Scott v. Gubler, supra.* While it might be argued that *Gubler* does not apply to the situation where, as here, the tax notices referred to lot 7 as well as the quantity of acreage to be valued, we agree with the trial court's reasons for applying *Gubler* to these facts. He stated:

> "The assessor has used as the basis of his assessment the same 35.78 acres the U. S. Government used as a basis to make a price when the land was patented to its first civilian owner. This acreage does not and did not ever intend to state how many acres were actually included in lot 7. It only intended to stand as a base for a price. [Citing *Johnson v. Hurst,* 10 Idaho 308, 77 P. 784 (1904).] It is clear that the assessor in assessing lot 7 has not assessed on the basis of the total acreage actually included in lot 7. However, it would not be proper to hold that because of an assessor's inaccurate calculation of an assessment that the taxpayer would therefore lose the rights he would gain under adverse possession by paying the taxes assessed."

We affirm the trial court's order quieting title and ownership of the land immediately south of the southern bank of the Boise River which lies between or within lot 2 and lot 7 of section 16, Township 4 North, Range 1 West, Boise Meridian, Ada County, Idaho.

SHEPARD, C. J., BAKES and BISTLINE, JJ., and SCOGGIN, J. Pro Tem., concur.