653 P.2d 1188

**D.R. CURTIS, COMPANY,**
Plaintiff-Respondent,

v.

**Grant MATHEWS, Defendant-Appellant.**

**No. 14034.**

Court of Appeals of Idaho.

Nov. 16, 1982.

W. Scott Barrett of Barrett & Mathews, Logan, Utah, Eugene Bush of Sharp, An-

derson & Bush, Idaho Falls, for defendant-appellant.

Randolph C. Stone of Parsons, Smith, Stone & Fletcher, Burley, for plaintiff-respondent.

WALTERS, Chief Judge.

This case involves the enforceability of a contract for the sale of goods where the parties left a factor in the price term to be agreed upon and failed to subsequently agree on the factor left open. Grant Mathews, a grain farmer, appeals a judgment holding him in breach of a contract for the sale of hard red spring wheat, and ordering him to pay $12,450 damages to D.R. Curtis Company. We affirm the judgment.

The respondent, D.R. Curtis Company, is a brokerage firm in the farm commodity market. As a "middleman" between producers and exporters of farm commodities, Curtis Company buys crops directly from a farmer and then sells the crop to the exporter. Thus, for each contract to purchase grain from a producer, Curtis Company makes an interrelated, but independent, agreement to sell the grain to a grain exporter. When the company deals with hard red spring wheat for export, the grain is generally sold to large export companies in the Portland, Oregon ("North Coast"), exchange. Grain sold in this exchange is delivered to and shipped from Portland.

In April, 1978, Raleigh Curtis, a grain broker for Curtis Company, contacted Mathews by telephone to discuss the purchase of Mathews' hard red spring wheat crop. Mathews had never before sold his grain to Curtis Company, although he had sold other crops to the company. Nor had he ever before dealt in the Portland grain export market. His experience was limited to the procedures in the domestic grain market at Ogden, Utah. Raleigh Curtis informed Mathews that the then current price of hard red spring wheat at the Portland grain terminal was $3.58 per bushel. That price was attractive, so Mathews orally agreed to sell 30,000 bushels to Curtis Company.

Both Mathews and Curtis Company, from prior dealings in the hard red spring wheat market, realized that although an express price per bushel is agreed upon, the price actually to be paid for the grain is not fixed until the grain is delivered to market. The actual price is determined, with respect to the expressed contract price term, by three factors: the protein content of the grain, the protein "basis" figure, and the protein "scale." The protein content, i.e., the actual percentage of protein in the grain, is commonly determined in the grain market at the time of delivery. The protein "basis" is a figure ordinarily agreed upon between the broker and the exporter, at the time they contract, in advance of delivery. The protein "scale" is commonly determined by the grain exporter on the day the wheat is delivered to the grain terminal.

Protein "basis" is a standard against which the actual protein content is compared. If the protein content coincides with the fixed protein "basis" figure, then the price paid per bushel coincides with the price expressed in the contract. When protein content and protein "basis" do not coincide, the actual price paid for the grain is determined on the protein "scale," which runs up and down from the protein "basis." The "scale" is expressed as cents-per-bushel for each one-quarter-percent by which the protein content exceeds, or falls short of, the protein "basis" figure.

Mathews testified that he expected the "basis" figure in his agreement with Curtis Company to be established by mutual agreement with Curtis Company. Because Curtis was unable to ascertain a protein "basis" figure while negotiating with Mathews, and because protein "scale" was commonly set by the grain export company on the day the grain was delivered, protein "basis" and protein "scale" were left open, to be established later.

On the day after their oral agreement, Raleigh Curtis signed and mailed a written memorandum to Mathews. It stated the terms of the agreement as follows: "$3.58 per bushel. Delivered Rail North Coast.... Hard Red Spring Wheat—Protein scale to be established." No reference to a protein "basis" term or to a means of establishing the term was made. Mathews later testified that because protein "basis"

was not mentioned he understood the written terms of the contract to mean that a protein "basis" figure was either not required or was still mutually to be agreed upon. He signed and returned the memorandum. Curtis Company sold the quantity of grain commensurate with this purchase to exporters within twenty-four hours of the purchase.

In September, at harvest time, Curtis Company informed Mathews that fourteen percent was the protein "basis" figure for the grain contract. The company had known that a "basis" of fourteen was required at the time they sold the grain to the grain export companies. It is not clear why Curtis Company waited until September to inform Mathews of the fourteen percent protein "basis" figure. Mathews replied he could not meet that figure, and he disavowed any contract. Thereafter, the parties continued to communicate, with Curtis Company trying to assure itself that Mathews had arranged to deliver the grain to Portland.

Curtis Company employees went to Mathews' farm in November to test the protein content of his hard red spring wheat and to check his progress in arranging to deliver the grain. When they arrived, Mathews informed them that he had already sold his grain through the Ogden domestic market. Curtis Company then filed this suit for breach of contract.

The trial court determined that the parties had entered into the oral agreement and had executed the written memorandum with the intent to enter into a binding contract. Because Mathews failed to deliver the grain as required by the contract, the court concluded that Mathews breached the contract. Curtis Company was awarded $12,450 as the cost of "cover."

On appeal, Mathews contends that the trial court erred in determining how price was to be determined under the contract. He further argues that the contract should

fail because it is ambiguous and indefinite. Mathews asserts that Finding of Fact No. 11 is not supported by substantial and competent evidence.[1] He alleges the error stems from a failure to distinguish between protein scale and protein basis. Assuming that no agreement was reached regarding protein basis, he urges that the contract is unenforceable because it is ambiguous and indefinite. He also asserts that the trial court applied an incorrect measure of damages.

■ We first address the alleged error in Finding of Fact No. 11. It appears undisputed that both Mathews and Curtis Company, from prior dealings in the grain market, knew that protein "scale" was established by the export purchaser on the date of delivery and at the place of delivery. It is not disputed that the parties expressly agreed that protein scale was to be established in this manner. On the other hand, the record does not show that Mathews and Curtis Company agreed to accept the "basis" figure fixed in the market. Consequently, we do not find substantial evidence in the record to support that part of Finding No. 11 which states "[t]hat the contract provided... [for] basis to be established on the date of delivery which is prevailing in the market at the place of delivery." We do not conclude, however, that this error materially affects the ultimate holding of the trial court.

[2] The trial court found that the parties had the requisite intent to form a binding contract for sale at the time they entered into the contract. This finding is supported by competent and substantial evidence and we will not disturb it on appeal. I.R.C.P. 52(a); *Nesbitt v. Wolfkiel,* 100 Idaho 396, 598 P.2d 1046 (1979). Parties to a contract for the sale of goods may make a binding contract for sale even though the price is not settled, so long as they intend to enter into a binding contract. I.C. §§ 28-2-305, 28-2-204(3). That is, in the sale of

1. Finding of Fact No. 11 was stated as follows:

11. That the contract provided "protein scale to be established;" which, by usage in the trade, means that either a premium or discount will be applied to the wheat on a scale, with a *basis to be established on the* *date of delivery which is prevailing in the* *market at the place of delivery,* i.e., the "north coast." Because of nondelivery by the defendant, no protein scale was ever established. (Emphasis supplied.)

goods, a contract will not fail on the grounds of indefiniteness when the price term is left open, *see* I.C. § 28–2–305, comment 1, so long as the agreement is entered with the mutual intent of the parties to make a binding contract.

■ If the price in such a binding contract is left open by the parties to be established by later agreement and they fail to reach later agreement, the parties are still bound to perform under the contract for the sale of goods. In such a case, the price is a reasonable price at the time for delivery. I.C. § 28–2–305(1)(b).

■ Here, the protein "basis" was a component of price; and, therefore it was an essential term of the contract for sale of the wheat. The term was left open to be established by the parties at a later date. The fact that this term was left open to be established, and the parties failed to reach an agreement on the figure, does not make the contract ambiguous or void for indefiniteness. It simply means that a reasonable figure remained to be determined. The record discloses no proof that a fourteen percent "basis" figure was unreasonable in the "North Coast" market. We hold that the trial court correctly determined that Mathews breached the contract for sale of grain.

■ In regard to the damages question, the trial court correctly determined that the proper standard for damages for nondelivery of the grain was the difference between the market price at the time the buyer learned of the breach and the contract price. I.C. § 28–2–713. The trial court found that Curtis Company learned of the breach on November 6 when Mathews refused to deliver the grain. The Portland market price for hard red spring wheat on this date was $3.99½ per bushel. This was $.41½ more than the contract price of $3.58 per bushel. Thus, $.41½ (damages per bushel) multiplied by 30,000 bushels gives a figure of $12,450, which the trial court awarded as damages.

■ Mathews argues that Curtis Company first learned that the grain would not be delivered in September when he stated that he was not going to deliver his grain subject to a fourteen percent "basis" requirement. Thus, he argues, the trial court erred by using the November 6 market price instead of September market prices in the computation of damages. Determination of the date when the buyer learned of the breach is a question of fact. Conflicting evidence exists in the record concerning the date when Curtis Company first learned that Mathews did not intend to deliver his grain pursuant to the contract. Mathews did inform Curtis Company in September that he would not agree to the fourteen percent figure. However, after that time he continued to communicate by telephone with Curtis Company employees, and he was still apparently willing to load his grain on Curtis Company trucks. The trial court made no mention of the September date in its findings of fact. The finding of the trial court that the breach occurred on November 6 is supported by substantial and competent evidence. Although conflicting evidence does exist, we will not disturb this finding. *J.E.T. Development v. Dorsey Const. Co.,* 102 Idaho 863, 642 P.2d 954 (Ct.App.1982).

■ Finally, Curtis Company requests that it be allowed recovery of a reasonable attorney fee for defense of this appeal. The request is made pursuant to I.C. § 12–120(2), which provides that in any action to recover on a contract relating to the purchase or sale of goods, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs. Curtis Company is the prevailing party both at trial and on this appeal. The action involves recovery for breach of a contract for the sale of goods. The request is therefore proper and is granted, subject to I.A.R. 41. *McKee Bros., Ltd. v. Mesa Equipment, Inc.,* 102 Idaho 202, 628 P.2d 1036 (1981).

The judgment is affirmed; costs and attorney fees to respondent, Curtis Company.

BURNETT and SWANSTROM, JJ., concur.