CALVIN R. McCAFFERTY, Plaintiff and Respondent, v. LESTER YOUNG and ALBERTA YOUNG, his wife, Defendants and Appellants.

No. 10662

Submitted June 16, 1964. Decided November 19, 1964.

397 P.2d 96.

Erickson & Richards, Leif Erickson (argued), Helena, for appellants.

S. M. Swanberg, Orville Gray, Stephen M. Swanberg (argued), Great Falls, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Plaintiff brought an action to quiet title and defendants appeal from an amended judgment entered following trial before the court.

The case arises out of a boundary line dispute between two ranchers. The plaintiff-respondent's ranch lies generally to the west of the North Fork of the Sun River, and the defendant-appellant's ranch lies generally to the east. The complaint was filed February 14, 1961, after several river bank arguments concerning the location of fences separating the ranches.

The area of conflict lies in Sections 7, 17, and 18 in Township 21 North, Range 6 West M.P.M. in Lewis and Clark and Teton counties. Originally, before 1942, one Christian A. Peterson owned the land comprising the two ranches. In 1942, Peterson sold the part of the ranch lying roughly to the west of the river to Woessner, a predecessor of plaintiff McCafferty. Then by contract for deed in 1944, Peterson sold the other segment lying to the east of the river to defendant Young.

It is the contention of the defendant that the center of the river as presently located is the boundary between the two ranches. This contention is made on the basis of testimony that Peterson, Woessner, Woessner's successor (Knudson), Young, and even plaintiff, all considered the river as presently located as the boundary between the two ranches, and that each acted accordingly. The plaintiff contends that the documentary exhibits do not support this argument, but that the clear import of these instruments indicates that the county line was intended to be the boundary.

The problem may be resolved by reference to the instruments, the statutory descriptions of Lewis and Clark and Teton county, and to the law of avulsion and accretion.

Lewis and Clark County was established in 1871 by legislative act (Territorial Legislature, Statutes of 1871, Section 6 p. 430; presently, section 16-225, R.C.M.1947). At that time the county

line was described to run along the "Sun River on the most northerly branch thereof." Likewise, Teton County, when established in 1893 (Laws of 1893, p. 205; presently, section 16-252, R.C.M.1947) was described to border along Lewis and Clark County by "meandering and following the center of the channel of the north fork of the Sun River."

The conveyances from Peterson to Woessner or to Young were not introduced into evidence by either party, but the conveyance from Knudson (Woessner's grantee) to McCafferty was introduced. The contract for deed between Peterson and Young of the other half of the Peterson ranch was introduced and complements the Knudson deed. We take it that the court below referred to the Knudson deed in order to ascertain what Peterson had originally conveyed to Woessner because the Knudson deed and the Young contract together cover all the land along the river in the area in dispute, and, therefore, the original conveyances by Peterson must have contained the same descriptions. Only by such deduction can an intelligible study of the case on appeal be made.

The Young contract recites that Peterson would convey: "the lot, piece, or parcel of ground situated in the *county of Teton* and State of Montana, known and described as [several sections not in dispute are described, along with the ones in issue, as follows:] Pt. N½ SE, SE, SE of Sec 7, Twp. 21, Rge 6 * * * Pt. SW SW * * * of Sec. 8, Twp. 21, Rge. 6 * * * E½ NW, Pt. W½ NW * * * of Sec. 17, Twp. 21, Rge. 6." (Emphasis supplied.)

The Knudson to McCafferty deed recites that conveyance is made of "the hereinafter described real estate, situated in the *County of Lewis and Clark,* and State of Montana, to-wit: [the disputed sections, as follows:] * * * and all that part of the SE¼ situated in *Lewis and Clark County* Section 7 * * * and all that part of W½ NW ¼ * * * situated in *Lewis and Clark County, Montana* Section 17 * * * and all that part of

the NE¼ situated in *Lewis and Clark County, Montana* Section 18." (Emphasis supplied.)

When these two descriptions are sketched out on a map showing both the present channel of the river and the 1871 channel it is seen that the descriptions make sense only by using the old channel as the boundary between the two grants. Were the new channel used, the northeast part of Section 18 would not be described in any instrument.

To illustrate, the following sketch depicts the old channel and present channel in the area in question.

The county line is shown by the dotted line. The old chan-

nel of 1871 is depicted by the parallel broken lines and the present channel by the broken dotted line.

The two instruments referred to show that the McCafferty deed was of land situated in Lewis and Clark County, and the Young contract was of land situated in Teton County, with the exception of two small tracts of land not in issue. Therefore, in light of both the legal descriptions of the parcels and the language of the instruments it appear that the county boundary is the division between the two ranches, with the exception of the two small parcels. The issue, therefore, is whether the county line remains in the center of the channel of the river as it existed in 1871. William R. Bandy, a civil engineer for more than half a century, prepared a survey of the area in 1960 upon request of Lewis and Clark County, which request was precipitated by this dispute. That survey shows the location of the river both before and after an alleged 1918 flood. In 1871, the river flowed south in the W½ E½ of the SE¼ of Section 7, then it turned east and north into the SW¼ SW¼ of Section 8, then south through the E½ W½ of Section 17. Sometime after 1871, allegedly in 1918, the river switched its course and flowed straight south out of the SE¼ SE¼ of Section 7, then turned east through NE¼ NE¼ of Section 18, and rejoined the former channel in the middle of the NW¼ of Section 17. As shown by the sketch, is is seen that the river formerly looped from Section 7 to Section 8 and then south to Section 17, but that it later changed course and flowed from Section 7, into Section 18, and then east into Section 17.

Plaintiff asserts that the relocation of the river was due to flood conditions occurring in 1918, and contends that the river flows in the new channel because of that avulsive change. If the evidence bears this contention out then the county line lies in the former channel as depicted in the Bandy Survey. We said in Bode v. Rollwitz, 60 Mont. 481, 493, 199 P. 688, 692, that, ''Where the channel of a river is sud-

denly and sensibly changed * * * so that the old channel is abandoned, except in high water, and a new channel formed, no change in the boundary or ownership of land riparian owners is worked thereby.'' This is the law governing avulsive changes, and in the Bode case the court reviews the several authorities supporting the rule. See also, 56 Am. Jur., Waters, § 477, p. 892. In the Bode case an ice jam caused the river to flow south around a plot of land instead of along the north side of the plot. There it was shown that there had been water flowing across the top of the plot and there was even a channel along the southern edge that contained water during high water periods. However, after this particular ice jam the water ceased to flow along the northern side, but assumed the new permanent channel along the southern side. The situation in the instant case is similar in that there is evidence of water sweeping across the land in issue. We agree with the trial court, however, that such lateral migration of water occurred rapidly and perceptibly instead of slowly and imperceptibly.

While it is true, as counsel for defendant contends, that it is presumed that changes in river banks are due to accretion rather than avulsion (Wyckoff v. Mayfield, 130 Or. 687, 280 P. 340), that rule does not apply where there is evidence of avulsive change. We think the evidence showing the age of trees lying between the former channel and the new channel precludes any conclusion that the lateral migration of the river was slow and imperceptible. The witness Hamre, who was the Helena National Forest Supervisor, testified that the trees lying on the land between the two channels were 70 to 80 years in age and still growing. Had the lateral migration of the river been gradual the soil supporting the roots would have been eroded and the trees would have been washed out. Instead, this physical evidence demonstrates that those trees have remained strong since at least 1880 or 1890. The question is one of fact, and the trial judge found there had been an avulsive change. We feel there is ample and credible evidence

to support that finding, and, therefore, it will not be disturbed. Rumsey v. Spratt, 79 Mont. 158, 255 P. 5.

Although the instruments are somewhat difficult to follow as to certain parts of the land along the river, it is clear that no land in Section 18 was conveyed to Young. This is consistent with the grant to Woessner as shown by the Knudson deed. Section 18 lies entirely within Lewis and Clark County. Peterson made no attempt to consider any part of Section 18 as part of Teton County in his contract to convey Teton County land to Young. If Peterson had intended the channel as it existed after the 1918 flood to be the boundary then he would have included part of the NE¼ of Section 18 in the contract to convey to Young. The only two tracts of land in Lewis and Clark County which Young owns lie in Section 8, SW¼ SW¼, and Section 17, SE¼ NW¼. These two tracts are not in issue because plaintiff concedes they belong to defendant.

The present fence follows the county boundary as the separation line between the two ranches, excepting the two small tracts in Lewis and Clark County. This fence follows the county line because it corresponds with the legal descriptions set forth in the instruments. Also, the language of the instruments shows that, excepting the two tracts, the lands were conveyed with reference to Lewis and Clark County for plaintiff's land and Teton County for defendant's land.

This court has held that in construing the terms of a deed, the court is obliged to ascertain the intention of the parties to the sale. Hollensteiner v. Missoula Lumber Co., 37 Mont. 278, 283, 96 P. 420; Henningsen v. Stromberg, 124 Mont. 185, 191, 221 P.2d 438. In some instances, as where the deed is ambiguous, the court may examine the surrounding circumstances in order to determine intent of the grantor. However, the Hollensteiner and Henningsen cases clear state that major reliance is to be placed on the language of the deed itself. Also, one requisite to looking beyond the deed is the presence of ambiguities or uncertainties in the deed. Such are actually not

present in the instant case. All instruments involved refer only to lands described as "in Lewis and Clark County" or "in Teton County." There is no mention of the North Fork of the Sun River. Therefore, the grantor's intent, as ascertained by the deed and contract is that the county line be the line of demarcation. It is apparent that the thrust of the defendant's argument is that Peterson thought the river as it stood in 1942 and 1944 was the county line. He was in error on this point, but the language of the deed and contract is clear. No matter what might be shown to have been his belief as to the county line, he did at least make it clear that the county line was to be the boundary.

For the above reasons, our principal concern with this case has been the location of the county line in this area. We agree that Mr. Bandy's survey, hereinbefore described shows the line as it was in 1871. The avulsive change in or about 1918 did not affect the line. We feel the accuracy of our decision will be more appreciated in the future because the Sun River and its tributaries could undergo additional changes of the avulsive nature. Avulsive changes are very deeply felt by landowners, but changes by accretion are, by definition, "imperceptible." In less than 100 years the river here has moved approximately a quarter of a mile from the SW¼ of Section 8 into the NE¼ of Section 18. This is substantial movement and is perceptible over the period of just one generation. Even without the clear evidence of a sudden flood we would be inclined to label this migration "perceptible" and, therefore, avulsive. See: 56 Am.Jur., Waters, § 484, p. 898, and cases cited there.

Montana is a state with many people owning vast amounts of land for ranching, farming, mining, and timber uses. Often these holdings are generally described in loose terms with natural boundaries serving as handy field reference points of ownership. The testimony in this case which is intended to establish the river as presently located as the boundary clearly shows

that several years ago the people related to these ranches carelessly waved their hands off toward the river as the boundary between the two ranches. Yet the deed and contract stated something of very different consequence.

Section 67-1303, R.C.M.1947, cited by defendant, is not in issue in this case because we are not confronted with a case of land being washed from one bank to another.

In our view, the findings of fact, conclusions of law and judgment of the district court are correct and they are affirmed.

MR. JUSTICES CASTLES, JOHN C. HARRISON, DOYLE and ADAIR, concur.