FAIRCHILD, Chief Judge.
This appeal forms another chapter in the reorganization litigation of the Chicago, Milwaukee, St. Paul and Pacific Railroad (Milwaukee Road). It raises questions of whether the Reorganization Court has jurisdiction to decide issues relating to real and personal property that are part of a railroad spur line on which service has been abandoned and whether, assuming that it does, the court should nonetheless have referred the case to the Montana state courts because of unsettled questions of state law and matters of convenience. The Reorganization Court held that it has exclusive jurisdiction over the property and that there is no reason for it to decline to exercise it. We agree and therefore affirm.

The Facts

The Milwaukee Road, on November 30, 1977, filed with the Interstate Commerce Commission (ICC) a notice of intent to *1220 abandon its railroad operations over certain lines including a line in Gallatin County, Montana, and on December 19, 1977, petitioned for reorganization in the United States District Court for the Northern District of Illinois. Order No. 1 of the reorganization, which was entered on December 20,1977, in paragraph 10, stayed the continuance or commencement of all third party proceedings against the railroad, with certain exceptions not applicable here. With approval of the Reorganization Court, the Milwaukee Road, on December 30, 1977, filed an application with the ICC to abandon certain branch lines, including the approximately 45 miles in Gallatin County. On February 24, 1978, the ICC issued an Order and Certificate of Public Convenience and Necessity permitting the abandonment and on May 8, 1978, the Reorganization Court authorized the trustee to take that action.
Once approval of the abandonment had been received, the railroad engaged contractors to remove and sell the rails and ties from the former line, and began to sell the underlying realty to the adjoining property owners and others.

The Court Proceedings

On August 31, 1979, petitioners, as representatives of the adjoining land owners, commenced a class action in state court to quiet title to the spur line property and to enjoin the county clerk and recorder from filing deeds purporting to transfer any portion of the abandoned line. Essentially, petitioners claimed that as a result of the abandonment the railroad’s easement interests in the right of way terminated and that title to the real property reverted immediately to the adjoining property owners. The same was true, they alleged, of the rails, ties, and bridges which had become fixtures to the land. In response to these arguments, the railroad filed a motion to dismiss on the ground that the Montana court had no jurisdiction over the Milwaukee Road’s property because exclusive jurisdiction had vested in the Reorganization Court.
On October 8, 1979, the state court, among other things, granted the requested injunctive relief, reserved for a period of sixty days any ruling on the question of jurisdiction,[1] and directed petitioners to file with the Reorganization Court, within sixty days, a request to abstain from exercising jurisdiction over the matter in question.
Pursuant to the state court’s order the request to abstain was filed in federal court where it was treated as a motion to grant relief from the stay provisions of paragraph 10 of Order No. 1. The motion was denied on April 8, 1980, in reorganization Order No. 313. The Reorganization Court held that it had exclusive jurisdiction over the property in question under 11 U.S.C. § 205(a), and that abstention was not warranted since “[n]o particularly unusual or unsettled question of Montana law seemed to be involved” and because the convenience to the petitioners of litigating in Montana did not outweigh the convenience to the estate of litigating in the Northern District of Illinois. Thereafter, an appeal was taken to this court.

Jurisdiction

The law is clear that a reorganization court has exclusive jurisdiction over a petitioning railroad and “its property wherever located,” 11 U.S.C. § 205(a) (1976),[2] and that the court’s summary jurisdiction extends to the adjudication of competing claims of title to all property which the railroad possesses at the time its petition is *1221 filed. Matter of Boston & Maine Corp., 596 F.2d 2, 7 (1st Cir. 1979), citing Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481—482, 60 S.Ct. 628, 629-630, 84 L.Ed. 876 (1940).[3] In an attempt to escape the force of this rule, petitioners argue that the Milwaukee Road was not in possession of the spur line property on December 19, 1977, because prior to the filing of its petition the railroad had in fact abandoned the line. We find it impossible to accept this contention.
Petitioners’ state court complaint, which was annexed to the papers it submitted in federal court, alleged only that the “railway line has in fact been abandoned and no railroad operations have been had on the easement . . . since the year 1978” — which was subsequent to the filing of the reorganization petition. Even if we assume that this allegation is not inconsistent with a claim that abandonment actually occurred prior to December 19, 1977, and that there is no insufficiency of pleading, we are convinced by statements made at oral argument that petitioners cannot prevail on this issue. The following colloquy took place between the court and petitioners’ counsel:
Counsel: “. .. I made the comment that there has been absolutely no rail traffic since 1978, which is correct. In addition to that you will find that in fact we would intend to present to the trial court that the railroad activity — other than an occasional train running up and down the rail for only that purpose, just so that [they] could say that [they] had a train running on the track — it didn’t operate .... As far as I am concerned they abandoned [the line] even though they ran a train sporadically prior [to filing the petition].”
Court: “But you are not in a position to say that there was a complete cessation of running of trains . . . prior to the filing?”
Counsel: “That- is correct. People can testify to the fact that, [for example,] two months ago a train went by. But as far as I know after ’78 there were none.”
Quite simply, even if we assume the truth of petitioners’ version of what the evidence would show, it would not prove that the Milwaukee Road was not in possession of the property. If trains continued to run on the line — albeit infrequently — up to the time the petition was filed, then the railroad remained in possession.[4] That the traffic, in petitioners’ view, was not as robust as it should have been is no reason for us to ignore that some traffic concededly was still taking place. We cannot say that the district court erred in finding, implicitly, that the disputed property was in the Milwaukee Road’s possession and that therefore it had exclusive jurisdiction over the asserted claims.

Abstention

Although having jurisdiction over property in the possession of a petitioning railroad, a reorganization court may, “when the interests of the estate and the parties will be best served, . . . consent to submission to State courts of particular controversies involving unsettled questions of State property law.” Magnolia Petroleum, supra, 309 U.S. at 483, 60 S.Ct. at 630. However, the absence of state authority directly on point does not necessarily mean that the law is so unsettled as to require submission of the issue to a state tribunal. A reorganization court is qualified to decide a suit at *1222 least where “no more uncertainty attends [its] disposition than is present in the decision of most legal questions,” In re Chicago & North Western Railway Co., 127 F.2d 1001, 1004 (7th Cir. 1942), or where the law bearing on the same question in other contexts is reasonably clear and there is no reason to believe that the state court would not conform to the prevalent rule on the specific issue presented, see Boston & Maine, supra, 596 F.2d at 8 (holding that reorganization court could reasonably infer, in determining ownership of railroad track and materials, that New Hampshire courts would adhere to general rule that trade fixtures retain their character as personalty absent an intention by the owner to make them a permanent part of the realty). Indeed, as this court observed nearly forty years ago, “[t]o refer to the state court every land question arising in bankruptcy would be to [increase the costs of litigation and] disregard the very objectives of the summary jurisdiction granted to the bankruptcy court.” Chicago & North Western, supra, 127 F.2d at 1004.
The dispute in the instant case concerns title to the property which constituted the now-abandoned line. Petitioners argue that it will not be possible for the Reorganization Court to fully and fairly adjudicate the competing claims for essentially two reasons. The first concerns the fact that the right of way was created by numerous deeds using varying language under unique historical circumstances and that it is not clear whether Montana law will permit parole evidence of these events to be used as an aid in interpreting whether the deeds conveyed fee interests or merely easements. The second reason advanced by petitioners is that there is no Montana legal precedent directly involving the abandonment of a railway or the issue of at what point a railroad easement ceases and the interest reverts to the grantor or his successors.
We do not find merit in these proffered justifications for declining to exercise federal jurisdiction. To begin with, we are not convinced that there is an unsettled question of the parole evidence rule’s applicability so difficult that its solution must be shunted to state courts. Petitioners’ conelusory assertion that it is unclear whether the parole evidence rule may apply to interpretation of recorded deeds is made without citation to any authority and without suggestion as to why the point is purportedly unclear. There is no indication that Montana courts have differed on this question, that they have intimated that the rule would be inapplicable in this context, or that the matter has in any way been questioned by the Montana legislature. Further, there is not even a representation that the applicability of the rule is disputed in other analogous areas. In short, the circumstances here are far different from those in Magnolia Petroleum where the facts showed that two Illinois intermediate appellate courts had reached contrary results on a question of fee ownership and where the United States Supreme Court held that the issue should have been submitted by the federal courts for resolution by the courts of Illinois.
We note, moreover, that the fact that this appeal involves numerous deeds and unique historical circumstances is no reason to refuse to decide the issues raised. Those are principally problems of factual complexity, not unsettled questions of state law. In general, there is no lack of relevant Montana law on construction and interpretation of instruments of conveyance, and these principles can be applied once the language of the documents and the facts surrounding their execution have been ascertained. See e. g., Voyta v. Clonts, 134 Mont. 156, 328 P.2d 655, 661 (1958) (deeds are to be construed narrowly against grantor); In re Vincent’s Estate, 133 Mont. 424, 324 P.2d 403, 411 (1958) (intent of the parties is to be derived from the four corners of the instrument); McCafferty v. Young, 144 Mont. 385, 397 P.2d 96 (1964) (where a deed contains ambiguous language, the court may examine surrounding circumstances to determine intent of grantor).
While there are apparently no Montana cases dealing with a railroad’s interest in the realty which makes up an abandoned right-of-way, there are reported decisions in *1223 other areas concerning whether the language of a deed conveys a fee or an easement, see e. g., Park County Rod and Gun Club v. Department of Highways, 163 Mont. 372, 517 P.2d 352 (1973); Bolinger v. City of Bozeman, 158 Mont. 507, 493 P.2d 1062, 1064 (1972); and considering under what circumstances an easement ceases by reason of abandonment, see e. g., City of Billings v. O. E. Lee Company, 168 Mont. 264, 542 P.2d 97, 99 (1975); Park County Rod and Gun, supra, 517 P.2d at 355. Also, there are Montana cases dealing with the question of whether property placed by a railroad on the land of another pursuant to an easement or other right retains its character as personalty and may be removed by the railroad upon abandonment of the line. See Helena & Livingston Smelting & Reduction Co. v. Northern Pac. Ry., 62 Mont. 281, 205 P. 224 (1922); Butte Electric Railway Co. v. Brett, 80 Mont. 12, 257 P. 478 (1927).[5] Thus, in the absence of persuasive reasons why the principles in the above cited cases might not be applicable to the instant dispute, we think that there is ample precedent to which the Reorganization Court may look in reaching a decision.
In reviewing a denial of leave to proceed elsewhere, the applicable standard is whether there has been an abuse of discretion. Magnolia Petroleum, supra, 309 U.S. at 483 n.8, 60 S.Ct. at 630 n.8; Boston & Maine, supra, 596 F.2d at 7. We cannot say that the standard is met with respect to the Reorganization Court’s determination that this case does not involve particularly unusual or unsettled questions of Montana law,
Assuming without deciding that abstention might be justified by reasons of convenience alone, we think that the district court did not err in concluding that the convenience to the estate of proceeding in federal court outweighed the convenience to petitioners and their class of proceeding in state court. The Milwaukee Road was forced to abandon numerous lines in addition to the one here in question. As the Reorganization Court noted,
“Not only would far flung litigation [throughout the midwest and western areas of the United States] be a great burden upon the trustee’s attorneys, to say nothing of his personnel who might be required to testify, but also the possibility of frivolous or harassing litigation would require the expenditure of time and attorneys’ fees which can be avoided by confining the litigation to [one] court.”
While we appreciate petitioners’ preference for litigating at home as opposed to in a distant court, again we can not say that the district court abused its discretion in striking the balance it did.
Affirmed.

. Petitioners’ brief indicates that as of the time it was written the state court had not made any ruling on the question of jurisdiction. We have not been informed of any change in that status.

. Section 205(a) is applicable to the facts of this case but has since been superseded by new provisions of the 1978 Bankruptcy Code. In pertinent part former section 205(a) stated:
“[T]he court in which the order [approving the petition for reorganization] is entered, shall, during the pendency of the proceedings under this section and for the purposes thereof, have exclusive jurisdiction of the debtor and its property wherever located.... ”

. Petitioners argue that the Reorganization Court does not have jurisdiction over plenary matters and that the matters involved herein are plenary because the Milwaukee Road had actually abandoned the line prior to the commencement of the reorganization proceedings. As our discussion below indicates, we reject the contention that the railroad was not in possession of the line at the time it filed its petition and therefore also reject the plenary jurisdiction claim advanced by petitioners.

. Counsel for petitioners also argued that the railroad failed to maintain the fences or the right of way or to pay various taxes or assessments. These facts, while probative of the Milwaukee Road’s financial condition and of the likelihood of a cessation of operation sometime in the future, do not, by themselves or coupled with the infrequent rail traffic, show that an abandonment had already taken place.

. Petitioners argue that these cases provide no precedent for deciding the fixture issue for they relied upon a state statute which is not here applicable. That this is not the case is demonstrated by Brett. There the court relied upon the statute in determining that railroad track and bridges were not fixtures. But as to trolley wires, which were not covered by the statute, the court resorted to general legal principles:
“[T]o ascertain whether ... an article attached to the realty is a fixture ... [t]wo of the tests are: The use or purpose of the annexation, which is entitled to much weight, and the intention of the party making the annexation, which is generally held to be the chief test.” 257 P. at 480.
On the basis of these principles the Supreme Court of Montana concluded that the wires were not fixtures but personal property. Though in the instant case we are concerned with rails, ties, and bridges, as opposed to wires, there is no apparent reason why the same principles of analysis should not apply, inasmuch as there is no governing statute.