No. 91-337

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

THE MONTANA DEPARTMENT OF STATE LANDS,

Plaintiff and Appellant,

-vs-

JERRY D. ARMSTRONG, et al.,

Defendants, Respondents and Cross-Appellants.

APPEAL FROM:   District Court of the Seventh Judicial District,
               In and for the County of Richland,
               The Honorable LeRoy L. McKinnon, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Tommy H. Butler, Dept. of State Lands, Helena,
            Montana

        For Respondent:

            W. H. Bellingham; Moulton, Bellingham, Longo &
            Mather, Billings, Montana  (Tom Brown, Inc., et al.)
            Craig D. Martinson; Veeder & Broeder, Billings,
            Montana  (Maguire Oil Co.)
            Gregory Paul Johnson, Billings, Montana  (Benjamin
            Minerals)
            Kemp Wilson; Crowley Law Firm, Billings, Montana
             (Tenneco Oil Co.)
            Kenneth R. Neill; Larsen & Neill, Great Falls,
            Montana
            Loren J. O'Toole; O'Toole & Hunt, Plentywood,
            Montana

Submitted on Briefs:  November 8, 1991

Decided:  January 7, 1992

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Montana Department of State Lands appeals from an order of the Seventh Judicial District, Richland County, in favor of defendants Jerry D. Armstrong, et al. We reverse.

We frame the issues on appeal as:

1. Whether the District Court erred in finding the Missouri River's migration into the West half of Section 9, Township 26 North, Range 59 East, was caused by avulsion.

2. Whether the District Court erred in finding two tracts within the West half of Section 9, Township 26 North, Range 59 East, were not owned by the State of Montana.

On June 11, 1986, the Montana Department of State Lands filed a quiet title action to two parcels of land in the West half of Section 9 in Richland County, Montana. One parcel is located in the Northwest Quarter of Section 9 (Parcel A). The other is located in the Southwest Quarter of Section 9 (Parcel D). On December 15 and 16, 1988, the District Court heard oral testimony presented by both sides after filing of cross-motions for summary judgment. The Honorable H.R. Obert issued findings of fact and conclusions of law on January 30, 1990, in favor of defendants. This Court suspended Judge Obert for reasons not involved here. The Honorable Leroy McKinnon subsequently assumed jurisdiction.

On April 4, 1991, the parties stipulated to Judge Obert's findings of fact and conclusions of law. Thereafter, Judge McKinnon issued a judgment upon Judge Obert's findings and conclusions. Judge Obert found that the State's claim of ownership

to the parcels was invalid and groundless. He further quieted title to the surface and to the oil, gas and other minerals in and under the parcels to defendant's, the present record owners.

Specifically, Judge Obert found the migration of the Missouri River to be avulsion and not accretion, and that the two tracts of land claimed by the State were sand bars and not islands. For the following reasons we reverse the District Court.

The standard of review as to the court's findings of fact is clearly erroneous. Steer, Inc. v. Department of Revenue, 245 Mont. 470, 474, 803 P.2d 601, 603. If substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that a finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed. Interstate v. DeSaye (1991), Mont. ___, ___ P.2d ___, 48 St.Rep. 986.

I

Whether the District Court erred in finding the Missouri River's migration into the West half of Section 9, Township 26 North, Range 59 East, was caused by avulsion.

Avulsion occurs when a stream suddenly changes its channel and forms a new one. If avulsion moves a stream away from a landowner's property, the property boundary line remains where it had previously been. McCafferty v. Young (1964), 144 Mont. 385, 391, 397 P.2d 96, 99. The landowner's property remains identifiable. Evidence presented to Judge Obert did not show a

3

distinct new channel where the old land could be distinctly identified. Nor was there evidence presented that a flood or ice jam caused the sudden formation of a new channel in the Missouri River.

Although the migration of the Missouri between **1902** and **1987** was very dynamic, the river movement cannot be characterized by avulsion. Avulsion is a sudden change in a river channel, resulting in an identifiable piece of land. The land formations here are not identifiable with the sedimentary layers on respondent's land.

We have previously discussed avulsion in McCafferty at **385, 397** P.2d at **96.** Defendants rely on McCafferty as Montana's law on avulsion. We said: "In less than **100** years the river here has moved approximately a quarter of a mile from the SW¼ of Section *8* into the NE¼ of Section **18.** This is substantial movement and is perceptible over the period of just one generation. Even without the clear evidence of a sudden flood we would be inclined to label this migration 'perceptible' and, therefore, avulsive." McCafferty at **393, 397** P.2d at **100.** This language is dicta and should not be cited as Montana's law on avulsion. The facts presented to the District Court do not support a finding that avulsion occurred but instead fall under the doctrine of accretion.

Accretion occurs when a stream gradually and imperceptibly changes its course over a period of time, resulting in sedimentary deposits on one bank along the water line. Jackson v. Burlington Northern Inc. **(1983),** 205 Mont. 200, 667 P.2d 406. This process is

**4**

distinguished from avulsion in that the property boundary line shifts with the water line. The riparian owner, absent exception or reservation, who owns land along the bank, retains land rights as long as the stream remains adjacent to the land. A riparian owner can conversely lose title to land when erosion causes the gradual washing away of land bordering a river. Jackson at 202, 667 P.2d at 407.

We conclude the District Court erred in its finding that the migration of the Missouri River into Section 9 was a result of avulsion. The processes described above indicate the land formations were a result of accretion, not avulsion. The District Court misapprehended the effects of the evidence in its determination that an avulsive process occurred.

## II

Whether the District Court erred in finding two tracts within the West half of Section 9, Township 26 North, Range 59 East, were not owned by the State of Montana.

It is not disputed that the State of Montana owns the land under the navigable rivers within the State to the low water mark. Section 70-1-202, MCA (1991). It is further true that accreted lands pass with riparian property unless excepted or reserved. Jackson v. State (1979), **181** Mont. 257, 266, 593 P.2d 432, 436. Lands or islands arising from the river bed can also be enlarged by accretion and such accreted lands attach to the island. Jackson v. Burlington Northern, Inc. (1983), 205 Mont. 200, 204, 667 P.2d 406, 408.

Both parties presented extensive expert testimony along with numerous photographs and maps. The parties agreed that the land formations in question arose out of the bed of the Missouri, but disagreed on which body was entitled to the accretions. "Accretions belong to the land from which they began." *Nielsen v. Statbucker* (Iowa 1982), 325 N.W. 2d 391, 394.

As the Iowa Supreme Court noted, prior to determining which body is entitled to accretion it is important to determine whether or not the land in question is an island. "One matter to be determined is whether an island existed to which accretion can be claimed . . . Not every body of land which protrudes above the surface of the water is an island. This is particularly true with an undisciplined river such as the Missouri, where, as the evidence shows, sand bars might come and go on a day-to-day basis." *Mather v. State* (Iowa 1972), 200 N.W.2d 498, 501.

Dr. Ray Breuninger, a sedimentologist, testified on behalf of the State that both Parcels A and D originated from the bed of the Missouri by deposits and build up of loose sediment. Testimony presented at the hearing, and the photographs bear out that the channels in question surrounding both parcels were still active prior to the land formations connecting to the shore. According to expert testimony presented by the State, the land formations in question developed permanent characteristics and became islands.

According to Dr. Breuninger, the formation of the island in the middle of the river in the North half of the Northwest Quarter, occurred between 1940 and 1949. The southern channel of the river

in this area remained open and free flowing.  After **1956,** the south channel of the river narrowed through accretion and build up of sediment, which are gradually blocking off the flow.  Although water was still flowing in the southern channel, in **1967** the island attached to the shore at low water and continued to build.

**As** to the island in the East half of the Southwest Quarter of Section **9,** Dr. Breuninger testified it was formed by a build-up of sand from the bottom of the river.  The channel between this island and the east bank is still active but has filled in from right to left, narrowing the channel.

Ray Womack testified as an expert on behalf of the defendants. He holds a masters in geology, specializing in fluvial geomorphology.  He testified that since **1937** when Fort Peck was constructed, the size of the annual peak was reduced, resulting in smaller floods on a yearly basis.  Further, between **1940** and the late **1950's,** the river widened its bed tremendously, causing multiple channels and sand bars.  **As** a result, erosion occurred inside the bends of the river instead of outside, with soil deposition on the outside rather than the inside. Womack testified that the result **of** this process is that the accretion goes to the riparian owner.  He further testified that, the land forms which resulted from the migration of the Missouri were transitory in nature and were not islands.

Womack testified that the channel in the Northwest Quarter **of** Section 9 has stopped flowing.  As to the Southwest Quarter of Section **9,** by **1988** very little trace of the channel was left and

the land form was firmly joined to the bank.  However, the question is whether a land form gains permanence prior to attaching to the riparian shore.  As the Iowa Supreme Court said;  "Title however, does not leap frog from the State to the riparian owner merely because a sandbar arising above the high water mark is also eventually attached to the riparian shore."  Nielsen v. Statbucker (Iowa 1982), 325 N.W. 2d at 395.

In determining whether a claim of accretion can be supported, the Iowa Court said:

> An island is traditionally defined as a body of land completely surrounded by water.  However, before an island can support a claim of ownership by accretion it must be able to show some permanence of its own . . . all the surrounding circumstances under which accretion occurred should be taken into account - the extent of the accretion itself, the growth of trees and vegetation, the nature of the water which surrounds the body of land, the topography of the land, and the testimony of the witnesses concerning its appearance, identification and permanency.

Mather v. State (Iowa 1972), 200 N.W. 2d at 501, 502.  (Citations omitted).

Testimony presented by the State's experts show that Parcel A had trees and vegetation growing on it.  The aerial photographs substantiated this testimony as to Parcel A.  Parcel D had grass and willows growing on it.  Thus the parcels had an economic value for grazing.  Additionally, Dr. Breuninger visited Section 9 in 1987 and testified to willows growing on Parcel D that were above his head.  Further testimony presented by the State indicated that both parcels were resistent to erosion.  This evidence of permanence was discernible prior to the islands ceasing to be

8

surrounded by river channels at low water.

We conclude that the District Court erred in finding that the two tracts were not owned by the State and we conclude such tracts were discernible islands prior to attaching to the adjoining lands and such islands and all accretions thereto are owned by the State of Montana.

For the foregoing reasons we reverse the judgment of the District Court and remand for entry of judgment quieting title to the property at issue in the State.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

9

January 7, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

TOMMY H. BUTLER
Special Assistant Attorney General
Montana Dept. of State Lands
1625 Eleventh Avenue
Helena, MT 59620


W. H. Bellingham
MOULTON, BELLINGHAM, LONGO & MATHER, P.C.
Suite 1900, Sheraton Plaza
P.O. Box 2559
Billings, MT 59103-2559

GREGORY PAUL JOHNSON
Attorney at Law
Petroleum Bldg., Suite 510
Billings, MT 59101

Kemp Wilson
CROWLEY LAW FIRM
P.O. Box 2529
Billings, MT 59101-2529   (Tenneco Oil Co.)

Kenneth R. Neil
LARSEN & NEILL
P.O. Box 1692
Great Falls, MT 59403-1692

Craig D. Martinson
VEEDER & BROEDER, P.C.
805 First Bank Building
Billings, MT 59101

Loren J. O' Toole
O'Toole & Hunt
P.O. Box 529
Plentywood, MT 59254

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy