DA 11-0759

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 187

MONTANA DEPARTMENT OF NATURAL
RESOURCES AND CONSERVATION, and
MONTANA BOARD OF LAND COMMISSIONERS,

        Plaintiffs and Appellants,

    v.

ABBCO INVESTMENTS, LLC, et al.,

        Defendants and Appellees,

BOYD A. HARDY, SHIRLEY J. HARDY,
HARD INVESTMENTS, L.P., NICKIE E.
ROTH,

        Counter-Claimants and Appellees,

    v.

MONTANA DEPARTMENT OF NATURAL
RESOURCES AND CONSERVATION, and
MONTANA BOARD OF LAND COMMISSIONERS,

        Counter-Defendants and Appellants.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DV 06-52
Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

            Tommy H. Butler, Melissa A. Hornbein; Special Assistant Attorneys
            General, Department of Natural Resources and Conservation, Helena,
            Montana

For Appellees:

    (No Appellees' brief filed.)

_____

Submitted on Briefs:  June 27, 2012

Decided:  August 28, 2012

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Appellants Montana Department of Natural Resources and Montana Board of Land Commissioners (collectively, "the State") appeal several portions of the Seventh Judicial District Court's summary judgment order in the State's quiet title action. We reverse and remand.

¶2 We address the following issues on appeal:

¶3 *1. Whether the District Court erred by declaring that islands arising vertically from the bed of the Missouri River after statehood are not held by the State in trust for the financial benefit of the public schools.*

¶4 *2. Whether the District Court erred by refusing to declare a surveyed boundary between the islands and adjacent private lands based on the State's evidence.*

¶5 *3. Whether the District Court erred in requiring the State to pay damages for taxes paid and improvements made on the land under the theory of unjust enrichment.*

¶6 *4. Whether the District Court erred by denying costs to the State.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶7 On July 12, 2006, the State filed an action in the Seventh Judicial District Court to quiet title to three islands in the Missouri River located in Sections 4, 5, and 8, Township 26 North, Range 59 East, MPM, Richland County, Montana. The State attached to its complaint a chronological series of surveys and aerial photographs demonstrating that the islands were formed from sedimentary accretions on the riverbed. The latest aerial photograph, taken in 2005, illustrated that the lands—described as Tracts 1, 2, and 3— were no longer surrounded by water but attached to shore land. The total property at issue was approximately 487 acres. The State averred that, because the islands emerged

3

after statehood, its title to the land was superior to that of all the defendants named in the complaint.

¶8 In July 2007, the State filed a request to enter the land, pursuant to M. R. Civ. P. 34, for the purpose of surveying. Nearly a year later, the State filed an amended complaint identifying the precise geographical coordinates of the land it claimed should be declared State-owned land in the quiet title action.

¶9 Of the numerous defendants named in the complaint, most did not file an answer and many of the defendants who did respond ultimately settled with the State. Defendants Boyd Hardy, Shirley Hardy, Hardy Investments, L.P., and Nickie Roth, (collectively "Defendants") filed answers and counterclaimed that they owned portions of the land in fee simple and that the District Court should quiet title in their favor.

¶10 On September 11, 2009, the State filed a motion for summary judgment. It asserted that the lands at issue properly were characterized as vertical accretions to a navigable river and, as such, the property belonged to the State and was held in trust for common public schools. Defendants filed a response brief and cross-motion for summary judgment. Defendants did not dispute that the lands constituted accretions to the riverbed and originally belonged to the State; however, they argued they had acquired rightful title to the land by adverse possession.

¶11 On May 5, 2011, the District Court granted the State's motion for summary judgment, ruling that the State holds title to the disputed lands and that Defendants could not acquire title by adverse possession against public trust land. The court further held,

however, that the riverbeds were not school trust lands. The court based its decision, in part, on this Court's statement in *PPL Mont., LLC v. State*, 2010 MT 64, 355 Mont. 402, 229 P.3d 421, *overruled on other grounds*, *PPL Mont., LLC v. Montana*, ___U.S.___, ____, 132 S. Ct. 1215, 1235 (2012), that "the District Court erred in concluding that the riverbeds at issue were school trust lands" because, even if it had authority to do so, the Land Board had not classified them as such. *PPL Mont.*, ¶ 116. The District Court then ruled *sua sponte* that the State was required, under the doctrine of unjust enrichment, to reimburse Defendants for all property taxes and improvements made on the land. The court concluded its order by directing each party to pay its own costs and fees.

¶12 On May 18, 2011, the State filed a motion to alter or amend the court's order pursuant to M. R. Civ. P. 59(g) (2009). The State asserted the court should strike the portion requiring the State to reimburse Defendants for the property taxes and improvements made on the land as that directive was improper. The State also averred it was statutorily entitled to recover its costs for bringing the quiet title action. Defendants opposed the State's motion and the State filed a brief in reply. The court did not rule on the motion and entered judgment on December 1, 2011, consistent with its earlier order. After the State's motion was deemed denied, the parties filed a stipulation, agreeing "that $8,845.00 is the value of taxes, improvements and interest as specified in the Court's May 5, 2011 Summary Judgment Order," and reserving each party's right to appeal any other issues. The State timely appealed, raising four issues for review. Defendants did not cross-appeal or file a response brief. Because the issue has not been appealed, we do

5

not address or disturb the District Court's judgment in favor of the State on Defendants' claim of adverse possession.

## STANDARD OF REVIEW

¶13 We review summary judgment rulings de novo, applying the same M. R. Civ. P. 56 criteria as the District Court. *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, ___ P.3d ___. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Albert*, ¶ 15. A district court's conclusions of law are reviewed for correctness. *Roe Family, LLC v. Lincoln County Bd. of Comm'rs*, 2008 MT 70, ¶ 12, 342 Mont. 108, 179 P.3d 514.

## DISCUSSION

¶14 *1. Whether the District Court erred by declaring islands arising vertically from the bed of the Missouri River after statehood are not held by the State in trust for the financial benefit of the public schools.*

¶15 Article X, Section 11(1) of the Montana Constitution provides:

> All lands of the state that have been or may be granted by congress, or acquired by gift or grant or devise from any person or corporation, shall be public lands of the state. They shall be held in trust for the people, to be disposed of as hereafter provided, for the respective purposes for which they have been or may be granted, donated or devised.

Based on this language, we agreed with the district court's determination in *PPL Montana* that riverbeds were public trust lands of the State. *PPL Mont.*, ¶ 115. We rejected the court's holding "that the riverbeds were school trust lands," however, because "[e]ven if the Land Board could arguably classify the riverbeds as school trust lands, the simple fact remains that it has not done so." *PPL Mont.*, ¶ 116.

¶16     On the basis of this statement in *PPL Montana*, the District Court determined that the islands in question were not held in trust for public schools.  The court discussed the "equal-footing doctrine" as announced in *Pollard's Lessee v. Hagan*, 44 U.S. 212, 11 L. Ed. 565 (1845), which held that, "upon their admission to the Union, [states] acquire title to the lands underlying the navigable waters within their boundaries."  *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 370, 97 S. Ct. 582, 586-87 (1977).  The District Court reasoned that because the States succeeded to the riverbeds as sovereigns, rather than as grantees of the federal government, Article X, Section 11(1) of the Montana Constitution was inapplicable.  Nevertheless, the District Court held that the land belonged to the State, not in fee simple, but as public trust property based on the doctrine articulated in *Illinois Cent. R. Co. v. Illinois*, 146 U.S. 387, 13 S. Ct. 387 (1982).

¶17     Under the equal footing doctrine, "the State's title to the riverbed vests absolutely as of the time of its admission and is not subject to later defeasance by operation of any doctrine of federal common law."  *Oregon ex rel. State Land Bd.*, 429 U.S. at 370-71, 97 S. Ct. at 587.  In contrast, "the public trust doctrine remains a matter of state law."  *PPL Mont., LLC v. Montana*, ___U.S.___, ____, 132 S. Ct. 1215, 1235.

¶18     The United States Supreme Court has made this distinction clear:

> While equal footing cases have noted that the State takes title to the navigable waters and their beds in trust for the public, the contours of that public trust do not depend upon the Constitution.  Under accepted principles of federalism, the States retain residual power to determine the scope of the public trust over waters within their borders, while federal law determines riverbed title under the equal-footing doctrine.

*PPL Mont., LLC v. Montana*, ___U.S. at ____, 132 S. Ct. at 1235 (citation omitted).

¶19 Under the equal footing doctrine, then, the State takes title as sovereign to the real property underlying the beds of its navigable waters. "After a State enters the Union, title to the land is governed by State law." *Montana v. U.S.*, 450 U.S. 544, 551, 101 S. Ct. 1245, 1251 (1981). The District Court recognized that islands arising after statehood by vertical accretion within a navigable riverbed belong to the State, citing *Montana Dep't of State Lands v. Armstrong*, 251 Mont. 235, 239, 824 P.2d 255, 256 (1992). The court observed, however, that *Armstrong* did not hold that such accretions were held in trust for the public schools and, relying on our statement in *PPL Montana*, held they were not.

¶20 Neither *Armstrong* nor *PPL Montana* involved the specific issue before us in this case. The issue addressed in *Armstrong* was simply whether the State owned the accreted lands in dispute. *PPL Montana* addressed whether Montana's navigable streambeds had been classified by the State Land Board as school trust lands under the Montana Constitution. Neither case had occasion to address the statute that is controlling under the facts presented here. Section 77-1-102, MCA, provides in pertinent part:

> (1) The following lands belong to the state of Montana to be held in trust for the benefit of the public schools of the state: . . .
> (b) all islands existing in the navigable streams or lakes in this state that have not been surveyed by the government of the United States.

¶21 The statute expressly classifies the ownership of accreted islands such as those at issue in this case. In accordance with the equal footing doctrine, once lands pass to the State, "they are governed by state law." *PPL Mont.*, ¶ 48. No challenge has been raised on appeal to the application of the statute in this case. The islands in question belong to

8

the State "to be held in trust for the benefit of the public schools of the state." Section 77-1-102(1)(b), MCA. It was error for the District Court to hold that the islands are not school trust lands and we reverse on this issue.

¶22 *2. Whether the District Court erred by refusing to declare a surveyed boundary between the islands and adjacent private lands based on the State's evidence.*

¶23 While the District Court granted summary judgment to quiet title in favor of the State, it also stated that "no legal description is being established by this Judgment" on the ground that there was "nothing in the file" to establish the legal description.

¶24 In addition to the surveys and aerial photographs provided with its original complaint, the State later submitted a metes and bounds description of the property it was claiming under the quiet title action. In December 2008, the State filed the affidavits of Roger Meyer and Ray Breuninger. Meyer, a licensed land surveyor in Montana, discussed his preparation and procedure for the survey he performed on the lands and attached a copy of the survey to his affidavit. Breuninger, a professional geologist, stated his opinion that the lands at issue were formed "after Statehood by the vertical accretion of sediment upon the bed of the Missouri River." Attached to his affidavit, Breuninger provided extensive geological analysis supporting his opinion.

¶25 None of the Defendants involved in this case contested the State's data, methods, or characterization of the boundary lines. The State's Amended Complaint included a specific description of each of the three island parcels based on the information provided by Meyer and Breuninger.

9

¶26 Once the District Court ruled that the State was the rightful owner of the islands, the State was entitled to judgment quieting title to the property in its favor. Although the court's judgment referred in general terms to the location of the "three islands" at issue, the State's uncontested evidence was sufficient to support a detailed description of each parcel of property and the descriptions in its Amended Complaint should have been included in the final judgment.

¶27 *3. Whether the District Court erred in requiring the State to pay damages for taxes paid and improvements made on the land under the theory of unjust enrichment.*

¶28 The District Court determined that the State "was unjustly enriched by collecting taxes on property that it should have known, after *Armstrong*, is 'owned' and on which it should never have collected taxes." Relying on the principle that "[h]e who seeks equity must do equity," the court ordered the State to reimburse Defendants for the taxes they paid and the improvements they made on the lands, plus interest. The State asserts three grounds in support of its argument that this order should be reversed. First, Defendants never sought damages or asserted unjust enrichment; second, the District Court was without jurisdiction to award damages against the State on a theory of unjust enrichment, because the State is immune from such a claim; and third, Defendants have an available remedy at law to recover taxes mistakenly paid. We find the first ground dispositive.

¶29 This Court has held that "due process requires a reasonable notice as to give everyone interested their opportunity to be heard." *Baston v. Baston*, 2010 MT 207, ¶ 18, 357 Mont. 470, 474, 240 P.3d 643 (quoting *Country Estates Homeowners Assn. v. McMillian*, 269 Mont. 131, 133, 887 P.2d 249, 241 (1994)). Thus, a party "'cannot

10

recover beyond the case stated by him in his complaint' because 'fair notice to the other party remains essential.'" *Baston*, ¶ 18, (quoting *McJunkin v. Kaufman & Broad Home Sys.*, 229 Mont. 432, 437, 748 P.2d 910, 913 (1987)).

¶30 Under circumstances similar to those in this case, we reversed a monetary judgment in *Baston* when the district court awarded damages that were neither requested nor at issue during trial:

> Baston was never put on notice she would have to oppose a monetary judgment in the form of a lien against her home. Baston was given notice only that Jeffrey and Sharon claimed ownership of the St. John's home under the legal theories of adverse possession, gift, and estoppel. Moreover, the only evidence presented by both parties was to support their respective claims of ownership of the home. Jeffrey and Sharon never once pled for, demanded, or even implied that Baston should pay them for alterations done on the St. John's home.

*Baston*, ¶ 20. Here, the only claim under which Defendants sought relief in their counterclaim, and the only argument they raised in their cross-motion for summary judgment, was that they possessed rightful title to the land. While Defendants' counterclaim included a general prayer for "any other relief the court deems appropriate," the State was only on notice that Defendants were seeking title under the doctrine of adverse possession and framed its legal arguments accordingly to pertain only to that issue. As in *Baston*, "neither party addressed the underlying theory of equity upon which the District Court ultimately rested its judgment." *Baston*, ¶ 21. It was therefore improper for the court *sua sponte* to award Defendants a remedy they never sought and the State had no opportunity to oppose.

11

¶31 As the State observes, Defendants are not without remedy. The proper procedure for Defendants to recover taxes erroneously collected on the property is to seek a refund by filing a written claim with the board of county commissioners for Richland County. Section 15-16-603, MCA.

¶32 *4. Whether the District Court erred by denying costs to the State.*

¶33 The District Court ordered each party to pay its own costs and fees. The State subsequently filed a motion to alter or amend the judgment, which was deemed denied.

¶34 "Costs are allowed, of course, to the plaintiff upon a judgment in the plaintiff's favor in the following cases: . . . (5) in an action that involves the title or possession or right of possession of real estate[.]" Section 25-10-101(5), MCA. This language "is not discretionary but is mandatory." *Benintendi v. Hein*, 2011 MT 298, ¶ 29, 363 Mont. 32, 265 P.3d 1239 (citing *Rolinson v. Bozeman Deaconess Health Servs., Inc.*, 2005 MT 95 ¶¶ 36, 38, 326 Mont. 491, 111 P.3d 202). Under § 25-10-201(8), (9), MCA, a party is permitted to include in its costs "reasonable expenses for making a map or maps if required and necessary to be used on trial or hearing" and "other reasonable and necessary expenses[.]" In addition to maps, the costs of "surveys are allowed where necessary to explain the situation." *Johnson v. Jarrett*, 169 Mont. 408, 417, 548 P.2d 144, 149 (1976).

¶35 In this quiet title action, the State was declared the owner of the disputed lands. As the prevailing party, it is entitled to recover the costs of producing the survey of the boundary of the State-owned land at issue. While the costs were substantial, the law

12

affords the court no discretion.  Accordingly, we reverse the District Court's denial of the State's costs and remand with instructions to determine and award the appropriate amount pursuant to § 25-10-101, MCA.

## CONCLUSION

¶36     The District Court's December 11, 2011 judgment is reversed and remanded for further proceedings consistent with this opinion.


                                        /S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT